## BEASLEY AND WIFE *vs.* WATSON.

[FINAL SETTLEMENT OF GUARDIAN'S ACCOUNTS.]

1. *Admissibility of guardian's declaration, as part of res gestœ.*—The declaration of a guardian, made at the time of lending out money in his hands, that it belonged to his ward's estate, is competent evidence for him, on settlement of his accounts, as tending to prove that fact.

2. *Admissibility of parol evidence to explain certificate of deposit.*—When a certificate of deposit has been taken by a guardian in his own name, parol evidence is admissible to show that the funds deposited belonged in fact to the estate of his ward; and that fact being shown by parol, the certificate is admissible evidence for him, in connection therewith, to prove the investment.

3. *Investment by guardian in Confederate States bonds.*—A guardian is entitled to a credit, on final settlement of his accounts, for the amount of money belonging to his ward's estate, which he had invested, in good faith, in Confederate States bonds, under the authority conferred by the act approved November 9, 1861; and his failure to report such investment to the probate court within sixty days, as required by the fourth section of said act, does not deprive him of the right to a credit for such investment, when it is not shown that injury resulted to the ward's estate from such failure; nor is his failure to charge himself in his account-current, as at first made out, with usurious interest collected on a loan of his ward's money, sufficient proof of a general fraudulent intent on his part in the management of the estate, to deprive him of the right to such credit on the ground of bad faith.  (BYRD, J., *dissenting.*)

4. *Allowance to guardian, for board paid to ward's father*—Where a father is not able to support and educate his children, during their minority, in a manner suitable to their circumstances in life, an allowance will be made to him, for that purpose, out of a child's private estate; and where board is paid to the father, by the child's guardian, the guardian will be allowed a credit for the amount so paid, if reasonable, on proof that it was demanded by the father, and that the father's circumstances justified the demand.

APPEAL from the Probate Court of Barbour.

In the matter of the final settlement of the accounts and vouchers of John Watson, as guardian of Jane A. Beasley, (late Williams,) wife of William Beasley. The guardian's account was filed for settlement in September, 1865; and the settlement was made in November, 1866, when the fol-

Beasley and Wife v. Watson.

lowing bill of exceptions was reserved by said Beasley and wife :

"On the trial of this cause, it was proved that said guardian received from Thomas Robinson, the former guardian of said ward, the sum of four hundred and twenty 44-100 dollars on the 24th January, 1860, and the further sum of five hundred and three 75-100 dollars on the 15th December, 1860; and that these sums of money were in par funds, being bills of the Eastern Bank of Alabama at Eufaula, and embraced all the estate of said ward. It was proved, also, by Jonathan Thomas, a witness for said guardian, that about the 1st January, 1861, said Watson loaned him nine hundred dollars, in bills of the Eastern Bank, which at that time were at par with gold, and took from him a promissory note therefor, payable to said Watson, as guardian, twelve months after date, at fifteen per cent. interest. Said Watson was at that time, and still is, guardian for said Jane Williams, and for her sister, Columbiana Williams. Said witness testified, that said note was payable to said Watson as guardian; but he did not recollect whether it was made payable to him as the guardian of both wards, or of one only; and if only one, he could not remember which one. Said note, being destroyed, could not be produced. Said witness proved, also, that said Watson, at the me he loaned him said nine hundred dollars, stated that was the money of his said wards, but did not state how much of it belonged to each. Before the introduction of this proof, said ward, by her attorneys, objected to that portion of it which stated the declarations of said John Watson, on the ground that it was inadmissible; but the court overruled the objection, and admitted said declarations as proof; to which the said ward excepted.

"It was proved by said witness, also, that he renewed the note for the loan of said money, in the early part of 1862, and made a new note, payable to said Watson individually, and not as guardian, and paid twelve and a half per cent. interest for this year, the note falling due the 1st January, 1863; and that in the early part of 1864, a short while before 'funding time,' he paid to said Watson the amount of said note, with interest at the rate stated, in

treasury-notes of the Confederate States. In his return for this final settlement, (it being the first settlement made after lending said money to said Jonathan Thomas,) said guardian charged himself with only eight per cent. interest on the amount so loaned out. After it was disclosed in evidence, by said Thomas, that he had paid said guardian the extra interest on said loaned money, the guardian moved the court to allow him to amend his return, so as to embrace said extra interest in his account; which was allowed, without objection. When said guardian offered to account for said extra interest, it was considered as done by consent, without any formal amendment.

"Said guardian stated, in his return, that soon after he received said Confederate States treasury-notes from said Thomas, (four hundred and fifty dollars of which, he stated in his return, belonged to his said ward, Jane Williams,) he funded the same in Confederate States four-per-cent. bonds; in proof of which allegation, he offered in evidence a paper writing, which was the only proof on this subject' and of which the following is a copy." (The paper here set out is a certificate, signed by the depositary of the Confederate States, at Eufaula, dated the 5th March, 1864, acknowledging the deposit of nine hundred dollars in his office by John Watson; "for which amount," it states, registered bonds of the Confederate States of America, bearing interest at the rate of four per cent. *per annum*, from this date, will be issued to him, under the 'act to reduce the currency, and authorize new issue of notes and bonds,' approved February 17, 1864, upon the surrender of this certificate at this office.") "The said ward objected to the introduction of this paper, on the ground of its inadmissibility; but the court overruled the objection, and allowed the paper to be read in evidence, and considered by the court in making up its decision; to which the said ward excepted.

"It was in proof, also, that said guardian paid to William Williams, the father of said ward, on the 30th January, 1861, the sum of seventy-two dollars, for the board of said ward for the year 1860; also, seventy-two dollars in Confederate States treasury-notes, on the 25th March, 1862, the board of said ward for the year 1861; and eighty-four

Beasley and Wife v. Watson.

dollars, in Confederate States treasury-notes, on the 8th January, 1863, for the board of said ward for the year 1862.  Said William Williams testified, as a witness on the part of said ward, that said ward was a minor, during all the time for which board was charged and paid as aforesaid, and resided with him; that he was a widower, and had only five children, said ward being the eldest of them; that he was well able to maintain and educate his children, independent of their own estate, in a manner suitable to their condition and circumstances in life; that he owned several hundred acres of valuable land, (though he owed the purchase-money therefor,) and owned nine negroes, being a woman and her eight children, none of whom were able to work except the two oldest, and they could do but little; that he also had plantation stock, farming implements, wagons, &c., and was worth, from the date of the first charge for board, up to the close of the war, ten thousand dollars above all liabilities.  It was thereupon proved by the said guardian, that said board was charged by said William Williams, and demanded of him by said Williams, and also of his predecessor in the guardianship, and was paid under the direction of the probate court.  It was proved, also, that said ward was furnished by her guardian with the means of purchasing most of her clothing, and other necessaries, including tuition, and that her father had furnished but little; also, that her father's circumstances were limited, during the whole of the time for which said board was charged; that he had never been regarded as a thrifty man; that he was a farmer, was about fifty years old, and had no other means than above stated.  Besides the items for board, above mentioned as having been paid in Confederate States treasury-notes, the guardian paid out for the ward's use, in Confederate treasury-notes, at the dates specified, the following sums of money, all of which were put on the credit side of his account, at their full amounts—that is to say: 'August 28, 1863, cash advanced to ward, $15. 75'; 'January 18, 1864, same, $14.00'; 'January 2, 1864, same, $10.00, and making pair of shoes, $4.00'; 'August 2 1864, leather, and making pair of shoes, $23.00'; 'October 7, 1864, cash advanced to ward, $12.00';

'December 1, 1864, same, $6.00'; 'March 18, 1865, same, $10.00'.

"It was proved, also, that said guardian was a farmer, in moderate circumstances, and had no money of his own to lend ; that he was guardian for none others than these wards, and had no other estate in his hands; that he was a soldier in the service of the Confederate States, from 1863, until the close of the ⬤, and was absent in the service nearly all the time, but was at home a short time, on furlough, when said alleged funding took place; and that he was a man of but little intelligence.  Said guardian moved the court to allow a further amendment of his return, in this—that he would make oath that he had not himself used, or loaned, or otherwise disposed of the said moneys which he had received as belonging to his ward's estate' which amendment was allowed, without objection, but subject to legal exception as proof, which, as the ward insisted, was no evidence at all.

"This being all the proof in respect to any contested item, as to which a reversal is sought in the supreme court, the court thereupon decided—

"1. That the four hundred and fifty dollars, alleged by the guardian to have been funded for the ward, and with the ward's money, was so funded in fact, and that the guardian was entitled to a credit to that extent; and that whether the ward's money was funded in said four-per-cent. certificates or not, it having been made to appear, to the satisfaction of the court, that it was received by the guardian, about February, 1864, in Confederate treasury-notes, it became valueless as the property of the ward, and the guardian was not accountable for its loss, and should be allowed a credit for it for this reason also.

"2. That the several items of board paid to said William Williams, as above stated, were proper and legal charges against the ward, and should go to the credit of the guardian, to their full amount, and ought not to be scaled under the ordinance of the State convention.

"3. That the said sums of money paid out, in Confederate treasury-notes, in payment of said items of board, as well as those paid out for the ward's use otherwise, as

herein above specified, should not be scaled, but allowed and credited to the guardian at their full amount."

The several rulings of the probate court, to which, as above stated, exceptions were reserved by the ward, are now assigned as error.

RICE, SEMPLE & GOLDTHWAITE, for appellants.

JUDGE, J.—It was one of the guardian's ordinary duties, to invest the surplus funds of his ward, and make interest thereon, if practicable.—Code, § 2024; *Allen v. Martin*, 36 Ala. 330. We think it sufficiently appears, from the evidence adduced on the final settlement, that the nine hundred dollars loaned by the guardian to Jonathan Thomas, belonged to the estates of his two wards, Jane and Columbiana Williams. The guardian so declared at the time of the loan; and this declaration, accompanying the act, and explanatory of it, was competent evidence as a part of the act itself. The truth of the declaration is shown by the fact, that the note taken at the time for the money loaned was made payable to the appellee as guardian, who, as the evidence showed, was guardian for none other than the wards named, was a farmer in moderate circumstances, and had no money of his own to lend.

2. The money due on this note was collected by the guardian, after one renewal thereof, in Confederate States treasury-notes. It was collected "in the early part of 1864;" and on the fifth of March of the same year, nine hundred dollars of the same currency were deposited by the guardian in the Confederate States "Depository Office," at Eufaula, to be funded in Confederate States four-percent. bonds. A certificate of deposit was taken by the guardian in his own name as an individual, and not as guardian. This certificate, we think, the court properly received as evidence. The facts in evidence, in the absence of countervailing proof, authorized the conclusion, that the currency deposited for the certificate, belonged, not to the guardian, but to his two wards; and this it was competent to show by parol evidence, in connection with the certificate.

*Bank v. Coleman*, 20 Ala. 140 ; *McTyer v. Steele*, 26 Ala. 487 ; *McGuire v. Russell*, at the present term.

3. The failure of the guardian to report the four-per-cent. certificate to the court within sixty days after it had been received, in conformity to the requirements of the statute, even if no sufficient excuse existed for the failure, furnishes no predicate for a charge against the guardian on account thereof, unless the ward's estate was injured thereby, which does not appear. This point was expressly so ruled by this court, in *Dockery v. McDowell*, at the January term, 1867. The circumstance of his failure to charge himself, in his account as first made out, with the usurious interest he had collected on the loan of the money of his ward, was not evidence of a general fraudulent intent in his management of the estate. This omission may have been the result of inadvertence, especially as the evidence shows he was a man of but little intelligence. On the authority of several adjudicated cases of this court, made at the last term, we hold that the probate court committed no error in allowing the credit for one half of the four-per-cent. certificate ; the other half being the property of the other ward of the guardian. In *Watson and Wife v. Stone*, decided at the January term, 1867, this subject is fully considered, and elaborately discussed. See also, *Dockery v. McDowell*, and *Neilson v. Cook*, decided at the same term. Whether the Confederate States treasury-notes, with which the certificate was procured, were funded for the benefit of the ward's estate or not, still, being property of her estate, if they had been retained by the guardian, they would have been as valueless as the certificates ; and as the court below properly decided, the guardian should not have been charged therewith.

4. A father is bound, by the common law, to support and educate his children during their minority ; but, when he has not the ability to do so, according to their station in life, assistance will be granted him from the private estate of the children.—*Watts v. Steele*, 19 Ala. 656 ; *Pharis v. Leachman*, 20 Ala. 662 ; *Alston v. Alston*, 34 Ala. 15. In the case last cited it was held, that in determining the question of the father's ability, it is proper to consider the

Beasley and Wife v. Watson.

amount of his estate, the number of his children, the condition of his family, his expenses and income, and the amount of his children's fortune.

It appears from the record in this case, that the father testified, as a witness for the ward, that he was well able to maintain and educate his children, independent of their own estate, in a manner suitable to their condition and circumstances in life, during the whole of the time for which board was paid him by the guardian. But, notwithstanding this conclusion of the witness, as to his ability to support and educate his children, the character of the property constituting his estate, as described by himself, shows that his income could not have been otherwise than very limited; and his necessities, doubtless, prompted him to demand payment for the board of the ward, as he was proved to have done. He had a large family of white and black children together, who were unable to contribute much, if anything, towards their own support; and considering the amount of the ward's estate at the time, we think it just and equitable that it should have been charged, to some extent, with her own maintenance and support. We cannot say the effect of the rulings of the probate court, on this question, was to charge her estate, for this purpose, to a greater extent, than was proper under all the circumstances; and the action of the court, in allowing the credits referred to, comes, we think, within the rule laid down on the subject in the case of *Alston v. Alston, supra.*

Decree affirmed.

BYRD, J., dissented on the question decided as to the allowance of the credit on account of the four-per-cent certificate, and declared that he would hereafter give the reasons for his dissent, in some case now before the court.