# Baines *v.* Barnes.

*Bill in Equity by Distributees, for Settlement of Administration.*

64  375
103  487

64  375
111  636

64  375
121  212

64  375
131  283

64  375
133  552

64  375
140  406

64  375
f141  175
141  388

1.  *When husband may join in bill with wife.*—Under the chancery practice which prevailed in 1875 (now changed by Rule No. 15, Code, p. 163), the husband was properly joined as co-plaintiff with the wife, where the bill sought to recover property belonging to her statutory separate estate, unless he had an interest adverse to hers ; and in a bill so filed while that practice prevailed, the husband will be treated as the trustee or next friend of the wife.

2.  *Parties to bill by distributees, for settlement of administration.*—To a bill filed by distributees, for a settlement of the administration on a decedent's estate, the personal representative of a deceased distributee is not a necessary party, where there are no debts outstanding against his estate ; nor when his estate has been settled, and his rights and interest have become vested in his surviving child, as sole distributee and heir at law, who is made a party to the bill.

3.  *Same; husband and wife.*—On the death of the wife, without issue, and intestate, being a distributee of the estate of her deceased father, her surviving husband is properly joined with the other distributees as complainant in a bill which seeks to compel a settlement of the administration of the estate.

4.  *Removal of cloud from title to land; who may maintain bill.*—A bill in equity, to remove a cloud from the title to land, can not be maintained by a person who is out of possession: he must first establish his title by a recovery in an action at law.

5.  *Multifariousness.*—A bill seeking relief as to an equitable demand, which is well pleaded, is not rendered multifarious by including also a legal demand, as to which no relief can be granted.

6.  *Surety on administrator's bond; defenses and liabilities.*—A surety on the official bond of an administrator, when sued in equity to compel a settlement of the administration of his deceased principal, may assert all the rights and defenses that would have been available to his principal, and is burdened with all the duties, liabilities and presumptions, that attached to the latter in his fiduciary capacity.

7.  *Release of surety by distributee.*—A release from his liability, procured by the surety from the female distributees, on payment of a nominal or insignificant sum of money, is not available to him as a defense, unless he proves that it was executed by them with full knowledge of all the facts, after being informed of its contents and legal effect.

8.  *Parent and child; allowance for support and education.*—The father is bound to support and educate his children, during their minority, according to his estate and condition in life, and is entitled to their labor and services; but, when the children have an ample estate, and the father is not able to provide suitable maintenance and education for them at his own expense, a court of equity, having regard to their welfare, will make him a proper allowance for that purpose out of their estate.

9.  *Same; when surety can not claim such allowance.*—The husband having qualified as the administrator of the estate of his deceased wife, and died without having settled his administration, the surety on his official bond, when sued in equity by the children for a settlement of the administration, can not claim a credit or allowance for their board and education, furnished by the husband and father, when it appears that he was able to support and educate them according to their station in life, and that they contributed by their

[Baines v. Barnes.]

labor to the support of the family. (The case of *Beasly v. Watson*, 41 Ala. 234, on this point, "carries principle to the extremest verge, and the court is unwilling to extend it.")

APPEALS from the Chancery Court of Greene.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 24th November, 1875, by William N. Baines and others, as the heirs-at-law and distributees of the estate of Mrs. Lucinda Fason, deceased, against John D. Barnes, who was the surety on the official bond of James M. Fason, since deceased, as the administrator of the estate of said Lucinda Fason, his wife ; and sought to compel an account and settlement of the said administration ; also, to recover the possession of a tract of land, which the complainants claimed by descent from the said Lucinda, and which the defendant held under conveyances from said James M. Fason ; and to cancel said conveyances as a cloud on the complainants' title, and to compel the defendant to account for the rents and profits. There was, also, a prayer for the cancellation of a certain release, or receipt, which the defendant had procured from the female complainants, by alleged fraudulent representations, as hereinafter more particularly stated.

Said Lucinda and James M. Fason were married, in said county of Greene, where they resided, on the 18th December, 1844 ; she being then the widow of Elijah Moore, deceased, by whom she had one child, and owning a considerable estate, consisting of real and personal property, which she held under the will of her said husband. Mrs. Fason died, intestate, some time during the year 1854, leaving four children surviving her by her second husband : Sabrina, Jane, Bertha, and Eleanora. Sabrina attained her majority, as the bill alleged, on the 26th December, 1866, and on the 18th January, 1872, married said William N. Baines ; Bertha attained her majority on the 9th September, 1869, and on the 18th January, 1872, married Arthur K. Murphy ; and Eleanora attained her majority on the 14th March, 1871, and on the 18th January, 1872, married William Z. Wilson. Jane married Jefferson Chipman on the 14th March, 1867, and died before the filing of the bill, intestate, and childless. The child by the former marriage, Joseph Ann Moore, married Henry T. Eatman in October, 1858, and died in April, 1861, intestate, and leaving an only child ; and said Henry T. Eatman also died, intestate, in August, 1868, leaving the same child, Henry M. Eatman, as his sole heir and distributee. Said Baines and wife, Murphy and wife, Wilson and wife, Chipman, and Eatman, were the complainants in the bill.

Letters of administration on the estate of Mrs. Lucinda

Fason were granted to her surviving husband, James M. Fason, on the 4th October, 1855, by the Probate Court of said county; and he gave bond for the faithful performance of his duties, with John D. Barnes and John P. Murphy as his sureties. Said Fason died, intestate, on the 22d October, 1870, never having settled his administration on his wife's estate; and it was alleged that he left no property, and that no administration had been granted on his estate. John P. Murphy also died before the filing of the bill, intestate, and leaving no property; and no administration had been granted on his estate. Hence, John D. Barnes was the only defendant. After Fason's appointment as administrator, as the bill alleged, he collected between $1,100 and $1,200 belonging to his wife's estate, which he appropriated to his own uses, and never accounted for. On the 26th March, 1856, he sold and conveyed to said John D. Barnes a part of the land which had belonged to his wife; and on the 15th October, 1866, he conveyed another portion to one Eatman, as trustee, to secure certain debts due to said Barnes and others; and this land also was afterwards conveyed to Barnes by the trustee. These conveyances the complainants asked to have cancelled, as clouds on their title; and to recover the possession of the lands, with an account of the rents and profits. They also asked the cancellation of a release, a copy of which was made an exhibit to the bill, and which, as they alleged, was obtained from the parties who signed it by the false and fraudulent representations of said Barnes, in whom they had confidence, and who willfully misstated its meaning and effect; they being unable to read it, and he professing his inability to read it to them, on account of the bad handwriting. This release, "Exhibit F" to the bill, was in these words: "Whereas James M. Fason died without making a settlement of his administration of Lucinda Fason's estate, and, he being insolvent, no one is likely to administer his estate; and whereas John D. Barnes is one of said Fason's securities on his administration bond, and is desirous that all matters should be settled and understood by the parties in interest; and whereas the undersigned were due said Fason, for board, clothing, tuition bills furnished: Now, in consideration of the premises, and the sum of one hundred dollars paid the undersigned by the said John D. Barnes, we have this day bargained, sold and transferred, unto the said Barnes, all our right, title and interest in said estate, including our distributive shares. In witness whereof, we have hereunto set our hands and seals, this 8th January, 1872." (Signed by said Sabrina, Bertha, and Eleanora Fason.)

The defendant answered the bill; admitting the grant of

[Baines v. Barnes.]

letters of administration to Fason on his wife's estate, his death without having made a settlement, and his insolvency at the time of his death. He alleged that Fason, soon after his marriage with said Lucinda, had collected and reduced to possession all the property and debts belonging or owing to her, and had used the money ; that after her death, it appearing that she had an interest in a chose in action due from the insolvent estate of one Edwards, letters of administration on her estate were granted to said Fason to enable him to collect this claim, and he did collect on it about $1,145 ; and that he never made any settlement of his administration, and was not required by the children to do so, because, as they well knew, they were indebted to him, in a larger amount, for board, clothing, and tuition, which he had supplied and furnished for them, and for which he claimed the right to charge them ; and he insisted that, on the statement of an account of the administration, if complainants should be held entitled to it, he should be allowed credits for the sums ascertained to be reasonable charges for the necessaries. He produced receipts which said Fason, as administrator of his wife's estate, had taken from his four daughters, Sabrina, Bertha, Jane, and Eleonora, each dated 4th February, 1867, and acknowledging the receipt of $500, "in payment of my distributive share in said estate, to be accounted for on the final settlement of said estate." As to the release, "Exhibit F" to the bill, he denied the charges of fraud and misrepresentation, and alleged that it was executed with full knowledge of all the facts, and for a valuable and sufficient consideration ; and he insisted that it transferred to him the respective interests of the three distributees who signed it. As to the land, he alleged that he had bought it from Fason in good faith, without any knowledge or notice of the complainants' rights, and had paid full value for it, and had been in the peaceable possession for more than ten years. He incorporated in his answer a demurrer to the bill, assigning as causes of demurrer—1st, that Chipman was improperly joined as a complainant ; 2d, that the bill was multifarious, because it sought to recover the land, and also asked a settlement of the administration ; 3d, that Baines, Murphy and Wilson were improperly joined with their wives as complainants ; 4th, that the married women ought to have sued by their next friends, and had no right to sue in their own names ; 5th, that as to the land, if the complainants had any right or title, they had an adequate and complete remedy at law ; 6th, that the complainants, as distributees, could only recover through an administrator *de bonis non*.

The chancellor overruled the demurrer, and also the plea

[Baines v. Barnes.]

of the statute of limitations of ten years, as a bar to the recovery of the land ; and on final hearing, on pleadings and proof, held—1st, that the lands sued for belong to the complainants, and the defendant was ordered to deliver the possession to them ; 2d, that the defendant was only liable for rents from the 1st January, 1875, and was entitled to compensation for all valuable improvements erected by him on the land ; 3d, that the children of said Fason and wife were properly chargeable with board, tuition and clothing, from the death of their mother, until the 1st January, 1862, " and for such further time as it may appear that their services fell below the reasonable charge for board and clothing" ; 4th, that the defendant was entitled to a credit for the amount of this allowance to Fason ; 5th, that he was entitled to a further credit of $100, the sum paid by him to the three female complainants ; 6th, that the complainants were entitled to an account of the administration, which was ordered to be stated by the register ; 7th, that the defendant was entitled, on the statement of the account, to a credit for all taxes paid on the land after the death of Fason, and to commissions on the receipts and disbursements of the administrator ; and, 8th, that the costs should be paid out of the funds and property in controversy.

From this decree each party appeals, and each assigns errors in this court.   The errors assigned by the complainants below are :  1. The allowance of a credit to the defendant for board, &c., furnished by Fason to his children. 2. The refusal to charge the defendant with rents prior to the 1st January, 1875.   3. Allowing the defendant compensation for improvements on the land.  4. Allowing him a credit for board, &c., furnished by Fason.  5. Allowing him a credit for commissions on the administrator's receipts and disbursements.   6. Allowing him credit for taxes paid on the land. 7. Adjudging the costs to be paid out of the property. 8. Not granting the full relief prayed in the bill.

The errors assigned by Barnes are :  1. The overruling of the demurrer to the bill, on each separate ground assigned. 2. The final decree, in each part adjudged against the defendant.   3. In decreeing that the complainants were entitled to recover the land, and ordering the defendant to deliver possession to them.  4. In restricting the allowance for board, tuition, &c., as shown by the decree.  5. In setting aside the release and transfer, Exhibit F, and in not holding that it was valid.

SNEDECOR, COCKRELL & HEAD, for complainants below.

WILEY COLEMAN, *contra.*  (No briefs on file.)

STONE, J.—The present bill was filed to have a settle-
ment of the administration of James M. Fason on the estate
of Lucinda Fason, his deceased wife, and to recover a tract
of land alleged to have descended to complainants from the
said Lucinda. Three of the complainants are daughters of
the said Lucinda, and other three are their husbands, they
being married women. Another daughter of the said Lu-
cinda had married and died after the death of their mother,
leaving a husband, but no descendant, surviving her. That
surviving husband is a party complainant. Still another
daughter had married after the death of her mother, had
issue, and then she and her husband both died, leaving no
other descendant. The son, issue of that marriage, grand-
son of the said Lucinda, was also made a complainant in this
bill. These are the parties complainant. As to the deceased
two daughters, it is averred they each died owing no debts,
and that there had been no administration on either of their
estates. As to Eatman, the son-in-law who had died, leav-
ing a son surviving him, it is averred in the bill that there
had been administration on his estate, his debts all paid, and
the administration settled and closed. On none of these
averments is there issue or controversy, and they may be
treated as admitted facts. Barnes is the sole defendant, be-
ing sued as the only surety of said James M. Fason who is
solvent, or living. The bill avers that Fason, the administra-
tor, and Murphy, the other surety with Barnes on the admin-
istration bond, had each died, leaving no estate; that there
had been no administration on either estate, and that they
had left nothing to administer. We think these averments
must also be treated as true.

It is objected that the husbands of the female complainants
are improperly joined as co-complainants, because they have
no interest in the subject-matter of the suit. If any thing is
recovered in this suit, either real or personal, it will be the
statutory separate estate of the *femes covert*, of which their
several husbands will become the trustees. Under the rule
of practice in force in 1875, when this suit was commenced,
and under the practice which then prevailed, it was the uni-
form habit to join the husbands of married women, either as
complainants or defendants in chancery, unless the nature of
the proceeding rendered it necessary to make the husband
an adversary party to his wife, when she was required to sue
by next friend.—Rev. Code, 825, Rule 15; *Michan & Wife v.
Wyatt*, 21 Ala. 813; *Gerald & Wife v. McKenzie*, 27 Ala. 166.
The present suit is really by the wives, to recover that which

is theirs, if any thing is due them; and, if necessary, we will treat the husbands as trustees or next friends of their respective wives. The rule is now different.—Code of 1876, p. 163, Rule No. 15.

Under the averments of this bill, there was no necessity for an administration on the estates of either of the deceased daughters, as they owed no debts. Neither was there necessity for further administration on the estate of Eatman, the deceased son-in-law, as his estate had been administered, his debts paid, and the estate wound up. Whatever recovery may be had in this suit, on the claim and right of Mrs. Eatman or her husband, will go to their surviving child, who is one of the complainants. Chipman, the surviving husband of the other deceased daughter, who died without issue, and intestate, will share in whatever recovery her estate may be entitled to, under the statutes regulating descents and distributions; and hence he is a proper party.—Code of 1876, § 2714. There is nothing to which Barnes can object, on the score of parties complainant in this case.—*Fretwell v. McLemore,* 52 Ala. 124. There was no necessity to have an administrator *de bonis non* of the estate of Mrs. Lucinda Fason. Nothing remained of the administration duties, except to make settlement and distribution. All debts had been paid, or will be presumed to have been paid, or barred, after so great length of time. It is not even pretended that Mrs. Fason's estate owed any debts —*Hatchett v. Billingslea,* at the present term.

It is objected for Barnes, that the Chancery Court had no jurisdiction to award restitution to complainants of the lands in controversy, because, according to the averments of the bill, there was a complete and adequate remedy at law. To this it is answered, first, that the conveyances in fee by Fason and Eatman, the trustee, had cast a cloud on the title of complainants, which it was their privilege to have the chancellor remove.

To this it is a sufficient answer, that the complainants were not in possession; were at perfect liberty to bring their action at law to test the title and right of possession; and therefore a bill to remove a mere cloud from the title would not lie.—*Rea v. Longstreet,* 54 Ala. 291; *Jones v. DeGraffenreid,* 60 Ala. 145. It is further replied to this demurrer, on the ground of adequacy of the remedy at law, that the agreement, exhibit F to the bill, which Barnes procured three of the complainants to sign on the 8th January, 1872, interposed such an obstacle to the maintenance of an action at law, that chancery will intervene to remove the obstacle, and grant the relief the complainants claim. The paper, exhibit F, shows in its recitals that its purpose was to secure to Barnes a

release from liability as surety on the bond of Fason, as administrator. Neither Fason nor his sureties incurred any liability for the land, or its use, by the execution of that bond. Fason held a life-estate in the land as tenant by the curtesy, there being issue of the marriage, born alive. The receipt, release, or conveyance, whatever it may be called, makes no mention of the land—does not attempt to describe it by numbers, metes and bounds, or in any other way; and in no event can be set up as a conveyance of the title. It could neither support nor defeat an action of ejectment; and hence is not a legal title. For the recovery of the land, the complainants had a complete and adequate remedy at law. If the said exhibit could be so construed as to be a sale or transfer to Barnes of the right of these three parties to the land in controversy, it is not a deed of conveyance. It conferred only an equity, which could not, at law, defeat complainants' right of recovery.—*Kelly v. Hendricks*, 57 Ala. 193; *Collins v. Johnson*, 57 Ala. 304. But it is not contended for Barnes that he acquired any right to the lands by virtue of the execution of the paper, exhibit F. We hold, then, that there is no equity in complainants' bill, so far as it seeks to recover the lands and the rents therefor. This disposes of the demurrer for multifariousness; for a bill founded on an equitable demand, well pleaded, is not rendered multifarious by being joined with a legal demand on which the chancellor can grant no relief, no matter how disconnected and dissonant the two grounds of complaint may be.—*Morris v. Morris*, 58 Ala. 443; *Carpenter v. Hall*, 18 Ala. 439. It results from what we have said, that the chancellor erred in granting to complainants any relief in regard to the lands. That should have been disregarded, and the complainants left to their action at law, if so advised.

The remaining questions of merit arise out of the claim of compensation for board, nurture and education of Fason's children, asserted by Barnes in recoupment of Fason's administration indebtedness, and out of the release, or transfer, exhibit F to the bill. These claims have no bearing on the rights of complainant Eatman, child and successor of Joseph Ann Eatman, *nee* Moore; nor does the execution of exhibit F affect the distributive claim of Chipman, who was not a party to the transaction. We will consider the last named of these claims first. Mr. Barnes, being surety of Fason, and the only responsible party to the bond, is alone sought to be made liable for the alleged default of his principal. The purpose of the bill is to coerce a settlement of Fason's administration. Barnes may make available all defenses which Fason could make, if he were defendant. He stands in his

shoes, and may assert all his rights. But he can do no more. He is burdened with all the duties, presumptions and disabilities, which rested on Fason in his fiduciary capacity. The law guards the interests of beneficiaries against their trustees, with watchful care, and scrutinizes closely all transactions by which the latter attempt to bargain with the former for a release of liability, or a transfer of property rights covered by the trust. Such release, or transfer, to be upheld, must be shown to be fair and reasonable, after the *cestui que trust* has been informed of his rights, and the measure of them. Parties thus circumstanced do not deal at arm's length. The *onus* is on the trustee to disprove all imputation of undue advantage.—*Johnson v. Johnson*, 5 Ala. 90; *Juzan v. Toulmin*, 9 Ala. 662; *Thompson v. Lee*, 31 Ala. 292; *Malone v. Kelly*, 54 Ala. 532; Perry on Trusts, § 861; *Waddell v. Lanier*, 62 Ala. 347.

Applying these principles to the case in hand, the release, or transfer, exhibit F to the bill, signed by the three complainants, Sabrina L., Bertha C., and Elenora Fason, of date January 8th, 1872, can not stand. The testimony not only fails to show that these young ladies were informed of the nature and extent of their claim, when they executed that paper, but it goes further, and proves to our satisfaction that they signed it without knowing, and without being able to learn its contents. Mr. Barnes can claim nothing under that release, or conveyance, except to have the one hundred dollars he paid allowed him as a credit against the distributive interests of these three complainants.

The relation of father and child, during the minority of the latter, imposes on the former the duty of nurture, maintenance and education, suitable to his estate and condition in life. If the father neglect or fail to furnish these necessaries to his infant child, graduated by the rule above, a stranger may supply them, and charge the father *in invitum* therefor. It must, however, be a clear and strong case of neglect or failure on the part of the father, to authorize the application of this principle. Much must be left to the discretion of the father in determining the style in which his minor children shall move. On the other hand, the father is entitled to the labor, services and obedience of his children, during their minority. These are correlative rights and duties between parent and child; and they exist, notwithstanding the father may be able to support his child in ease and luxury, without the labor of the latter, and notwithstanding the child may own an independent, ample estate in his own right. An exception to this rule is allowed, when the father is unable to maintain and educate his child, having an

independent estate, in a style suitable to that estate. In such case, the Chancery Court will make an allowance out of the infant's estate, for either the whole or a part of the child's maintenance and proper expenditures, as the estate of the child, and the circumstances of the father, may render necessary for the welfare of the child. Benefit to the infant is the controlling consideration; but the circumstances of the father may be inquired of, to enable the court to determine whether or not he is able to properly maintain such child.—*Alston v. Alston,* 34 Ala. 15. We have examined the evidence in this case, and it is our opinion that Fason, the father, was able to support and maintain his children in the style in which they moved, until his slaves were emancipated at the termination of the war in 1865. After that time, and until his death, we are convinced that the daughters, by their labor, contributed their full share to the support of the family, and that nothing should be charged to them during those years for maintenance. Our attention has been called to the case of *Beasly & Wife v. Watson,* 41 Ala. 234. We are satisfied that case carries principle to the extremest verge, and we are unwilling to extend it.

There must be a reversal in each of the appeals presented by this record. On the appeal by Barnes, there will be no remandment. The adult complainants will pay the costs of that appeal, in this court, and in the court below, including half the costs of the transcript. On the appeal by Baines and others, this court, proceeding to render the decree the chancellor should have rendered, doth order and decree, that the complainants are entitled to recover of defendant the sum collected by Fason, as administrator of Lucinda, after her death, with lawful interest thereon, commencing six months after it was collected, but not to exceed twenty-five hundred dollars, the penalty of the administration bond. He will be allowed a credit on the accrued interest on this sum of the one hundred dollars, paid to the three female distributees, to be deducted ratably from their several distributive shares. Complainant Chipman is entitled to only one half of the fifth part of the fund which would have fallen to his intestate, deceased wife. The other half of that share to be divided equally between complainants Sabrina, Bertha and Eleanora, and the infant Eatman. The register will take the account on these principles, and report the same to the Chancery Court. All other questions in the court below are left open for the chancellor. The appellee John D. Barnes will pay the costs of appeal by Baines and others in this court and in the court below, including half the cost of the transcript.