# Bibb *v.* Bibb.

### Statutory Action in nature of Ejectment.

1. *Devise to oldest son and his male issue, and, on default of such issue, then to second son and his male issue.*—Under the statute which was of force in 1840, converting an estate in fee tail into an estate in fee simple in the first taker (Clay's Digest, 157, § 37), if lands were devised to the testator's oldest son and his lawful male issue, and in case he should die leaving no lawful male issue, or the same shall become extinct be-

fore he or they arrive at the age of twenty-one years, and likewise leaving no male issue, then to the next younger son and his lawful male issue, the oldest son took an absolute estate in fee simple. (Overruling *Edwards v. Bibb*, 43 Ala. 666, and 54 Ala. 475.)

2. *Same; conclusiveness of former decisions.*—This will having been before this court in the two cases above cited, which involved the same lands now in controversy, and in which the devise to the second son was sustained; the defendants in this case having bought on the faith of those decisions, and paid full value for the property; the court adheres to those decisions, as settling a rule of property for this particular case, although the plaintiff, daughter and sole surviving child of the oldest son, is not concluded by them as *res judicata*, and is not barred by the statute of limitations.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by Sallie Bibb, against Porter Bibb and others, to recover certain lands, particularly described in the complaint; and was commenced on the 23d February, 1885. Each of the defendants pleaded not guilty, as to the particular part of the lands which he claimed, and entered a disclaimer as to the residue; and the cause was tried on issue joined on this plea. The facts were agreed on, the following being all that are material: The lands sued for are a part of the plantation known as the "*Belmina estate*," of which Thomas Bibb, senior, died seized and possessed in the year 1840. By the will of said Thomas Bibb, senior, which was dated February 14th, 1839, and duly proved and admitted to probate soon after his death, the said plantation, with certain reservations, was devised to his widow for life; and the 6th item made this further disposition of it: "Having, in item 2 of this my last will and testament, given and bequeathed unto my wife, during her natural life, that portion of my Belmina estate not in this will expressly reserved; now, at the death of my said wife, I do hereby give and bequeath that same estate, together with all the things described in said item 2, as devised to my said wife, unto my eldest son, Thomas Bibb, and his lawful male issue; and in case my said son Thomas should die, leaving no lawful male issue, or, having such male issue, the same shall become extinct before he or they shall arrive at the age of twenty-one years, and likewise leaving no male issue, then, and in that case, my will and desire is, that [said] estate, with the property named and devised to my said wife, shall become the property of my son David Porter Bibb, to descend to the lawful male issue of him, my said son Porter. And, lest my other children may conceive that I have herein made a distinction, in thus excepting and devising this portion of my estate, I will remark to them, that I am prompted from no other consideration than to perpetuate this part of my estate in my family."

[Bibb v. Bibb.]

At the death of the said testator, his son Thomas was about thirty-three years old, and had never been married ; but he married in the year 1857, and had one child born to him, who is the plaintiff in this suit, and who was born in September, 1861 ; and he died on the 11th November, 1861. The testator's second son, David Porter Bibb, was married in the year 1834, and had two children living at the time of the testator's death, the eldest of whom, a son, was born in 1837, and is still living ; and said David Porter Bibb died on the 9th June, 1865. After the death of the testator, by written contract and agreement between the widow and children, his son Thomas " became absolute owner of a part of said Belmina estate, and David Porter became, in like manner, the absolute owner of one fourth of said estate ; but neither of these parts is in controversy in this suit." Said Thomas Bibb, junior, was, at the time of his death, in November, 1861, in possession of the land now sued for ; and his widow, the plaintiff's mother. " remained in possession thereof, from that time until June, 1865, a short time before the death of said David Porter Bibb." After the death of said Thomas Bibb, junior, his widow intermarried with Julian Edwards ; and he afterward instituted an action at law, jointly with his wife, as executrix of the will of Thomas Bibb, junior, against two of the sons of David Porter Bibb, to recover a part of the lands embraced in the tract, as shown by the report of the case in this court.—*Edwards v. Bibb*, 43 Ala. 666. Afterwards, Mrs. Edwards filed a bill in equity, jointly with her husband, claiming dower in the lands as the widow of said Thomas Bibb, junior ; but the case was decided against her, on the authority of the former decision, as shown by the report of the case.—*Edwards v. Bibb*, 54 Ala. 475. In each of these cases, the devise to David Porter Bibb, on the death of Thomas Bibb without male issue, was sustained as a valid executory devise. "David Porter Bibb was, at the time of his death, on the 9th June, 1865, in possession of the lands now sued for ; and his administratrix and heirs succeeded to his possession, and have been, with the defendants holding under them, in possession ever since. Porter Bibb, one of the defendants, is one of the heirs at law of said David Porter Bibb ; and he and the other defendants are purchasers, claiming their respective portions from the widow and other heirs of said David Porter Bibb. The lands sued for are the same that were involved in the former cases, above cited, and held under the same will. The defendants bought their respective portions since the decision in 43 Ala. 666, and in reliance upon it, and paid full value ; and much of this land has been bought and paid for since the decision in 54 Ala. 475. Both of these adjudications were known and acted on, in consummating said purchases."

[Bibb v. Bibb.]

On these facts, the court charged the jury, on request, that they must find for the defendants. The plaintiff excepted to this charge, and she now assigns it as error.

F. P. WARD, and R. W. WALKER, for the appellant.—(1.) By the statute which was of force when this will was executed and took effect, Thomas Bibb took an absolute estate in the property, and the limitation over to David Porter Bibb was void. That statute was enacted in 1812, and was judicially construed in *Simmons v. Augustin* (3 Porter, 69); and being re-enacted in 1841 (Clay's Digest, 157, § 37), that construction was followed in *Martin v. McRee,* 30 Ala. 116. In *Edwards v. Bibb* (43 Ala. 666; 54 Ala. 475), that construction was departed from, and the limitation over to David Porter Bibb was sustained; but, in the second case, an able dissenting opinion was delivered by STONE, J., which is invoked by the appellant as her argument; and in support of its correctness the following authorities are cited: 3 Jarman on Wills, pp. 200–239; 1 Fearne on Remainders, 196; *Powell v. Board of Missions,* 49 Penn. St. 48–55; *Angle v. Brosius,* 43 Penn. St. 187; *Jones v. Standifer,* 18 Ala. 400; *Machen v. Machen,* 15 Ala. 375; *Lenoir v. Raney,* 15 Ala. 667; *Doe v. Applin,* 4 D. & E. 82; *Doe v. Cooper,* 1 East, 229; *Carter v. Tally,* 1 Call, Va. 154; *Hill v. Barrow,* 3 Call, 342; 1 Leigh, 96; *Tinsley v. Jones,* 13 Gratt. 289; 2 Comst. 355; *Gray v. Gray,* 20 Geo. 804; *King v. King,* 12 Ohio, 390; *Jordan v. Roach,* 32 Miss. 481; *Hanford v. Milligan,* 50 Ind. 542; *Purifoy v. Rogers,* 2 Saund. 388; *Doe v. Morgan,* 3 T. R. 763; *Allen v. White,* 16 Ala. 186; *Flinn v. Davis,* 18 Ala. 132; 2 Washb. Real Property, *373; Tied. R. Prop. §§ 536–38. (2.) The appellant is not concluded by those decisions, to which she was neither party nor privy; nor is she barred by the statute of limitations.—Code, § 3236. (3.) The doctrine of *stare decisis* can not be invoked to defeat the appellant's rights. If the former decisions are correct, they do not need the aid of that doctrine; and if wrong, they ought not to be allowed to defeat the ends of justice. By express statutory provision, a former decision of this court is not conclusive on a second appeal (Code, § 3951); and yet the effort is made to hold it conclusive on a stranger, who had no opportunity to assert her rights. It is admitted that the defendants purchased in reliance on those decisions; but that reliance was on the correctness of the decisions, and it was coupled with knowledge of the statutory right reserved to the plaintiff to assail them in a new action. These two decisions involve only the construction of a single will, and a statute long since repealed; they have not become a rule property, and, if erroneous, ought to be overruled.

Wells on *Res Adjudicata*, § 589; *Henry v. Bank*, 5 Hill, 535:
1 Kent's Com. 475; 48 Cal. 493; *Hays v. Cockrell*, 41 Ala. 91;
*Hardigree v. Mitchum*, 51 Ala. 151; *Baker v. Pool*, 56 Ala.
14; *Nelson v. Boynton*, 54 Ala. 368; *Bean v. Chapman*,
73 Ala. 140. (4.) To hold that the former decisions, if errone-
ous, are nevertheless conclusive on the plaintiff, who has never
had a day in court, would be to deprive her of her property
without due process of law, and to "confess that the court is
powerless to do justice to suitors who have never before had a
hearing."—*McArthur v. Scott*, 113 U. S. 340, 405; *Neal
v. Delaware*, 103 U. S. 397; *Mead v. Larkin*, 66 Ala. 87;
*Wilburn v. McCalley*, 63 Ala. 436; *Ray v. Norsworthy*,
23 Wall. 128; *Dartmouth College v. Woodward*, 4 Wheat.
518; *Pennoyer v. Neff*, 95 U. S. 714; Cooley's Const. Lim.,
553–56.

McClellan & McClellan, and O. R. Hundley, *contra*,
relied on the former decisions in the case of *Edwards v. Bibb*
(43 Ala. 666, and 54 Ala. 475), and the cases there cited on
brief of appellees' counsel, as establishing the proper construc-
tion of the will; and further cited, as showing that those de-
cisions should be adhered to, even if erroneous, as the law of
this case, the following authorities: *Ala. Insurance Co. v. Boy-
kin*, 38 Ala. 511; *Kelly v. Turner*, 74 Ala. 518; *Dewey
v. Gray*, 2 Cal. 377; *Thompson v. Albert*, 15 Md. 285; *Hihn
v. Courtis*, 31 Cal. 402.

CLOPTON, J.—The suit is a statutory real action brought
by appellant, who claims title, by descent, as the heir at law of
Thomas Bibb, Jr., whose title is derived from the will of·his
father, Thomas Bibb, Sr. The will was admitted to probate in
April, 1840, and contained a clause, by which certain real
estate, including the lands in controversy, and personal prop-
erty, were devised to the widow of the testator during her
life, and at her death to his eldest son, Thomas Bibb, and his
lawful male issue; "and in case he should die, leaving no
lawful male issue, or the same shall become extinct, before he
or they shall arrive at the age of twenty-one years, and like-
wise leaving no male issue, then and in that case," to his son,
David Porter Bibb, to descend to his lawful male issue. The
declared purpose of the testator was to perpetuate this portion
of his estate in his family. Thomas Bibb, Jr., died without
leaving male issue; and after his death, David Porter Bibb
took possession of the lands, under whom defendants claim.
The statute then in force, and by which the will is governed,
declared that every estate in lands, which is created an estate
in fee-tail, shall be an estate in fee-simple, discharged of the

[Bibb v. Bibb.]

conditions annexed thereto by the common law, restraining
alienations before the donee shall have issue, so that the donee,
in whom the conditional fee is vested, shall have the same
power over the estate, as if they were pure and absolute fees;
with a proviso, that any person may make a conveyance or de-
mise of lands to a succession of donees then living, and the
heir or heirs of the body of the remainder-man, and in default
thereof to the right heirs of the donor in fee-simple.—Clay's
Digest, 157, § 37.

This clause of the will, and the construction of the statute
as applicable to its limitations, have heretofore undergone
consideration, and have been adjudicated by this court in two
cases.—*Edwards v. Bibb*, 43 Ala. 666; *Edwards v. Bibb*,
54 Ala. 475. The first case was an action brought by Ed-
wards, who had married the widow of Thomas Bibb, Jr.,
in right of his wife, and in her name as executrix of the will
of her former husband, against the sons of David Porter Bibb,
who had also died, to recover a part of the lands devised. It
was ruled, that the clause of the will constituted a valid execu-
tory devise of the lands over to David Porter Bibb, and that
they passed to him on the death of Thomas Bibb, Jr., leaving
no lawful male issue. The second case was an application by
the widow of Thomas Bibb, Jr., for dower in the same lands;
and the same ruling was adopted, though the justice rendering
the opinion was constrained to say, that the number, if not the
weight of the adjudged cases, would lead to the conclusion,
that Thomas Bibb, Jr., took a fee simple in the lands under
the operation of the statute. It is now urged, that the decis-
ion in the former cases is clearly erroneous; that the rights of
the plaintiff were not then represented, and she should be ac-
corded a day in court before being deprived of her property;
and that the private hardships of the isolated case of defendants
should not prevent the court from considering and determin-
ing her title upon its merits, independent and irrespective of
the previous decisions.

*Edwards v. Bibb*, 43 Ala. 666, *supra*, is itself a departure
from the rule declared, as far back as 1836, in the case of *Sim-
mons v. Augustin*, 3 Por. 69, which was a decision made while
the statute was in force; and which was subsequently followed
in *Martin v. McKee*, 30 Ala. 116. After consideration, we
do not hesitate to announce, that, in our opinion, the construc-
tion placed on the statute by the earlier decisions is correct, and
that the principle of *Edwards v. Edwards*, *supra*, is in viola-
tion of the statute, and defeats the legislative intent. With-
out attempting to add anything thereto, we refer, in support
of this conclusion, to the opinion of STONE, J., in 54 Ala. 475.
As the statute has not been in force for more than thirty years,

it is more probable that the decision first made has become a
rule of property, than the later decisions.  Had there been no
express adjudications in respect to the title, under which the
plaintiff claims, and to the lands in controversy, we should re-
gard a return to the rule as settled while the statute was in
force, and which stood unshaken for over thirty years, as a due
observance of the rule of *stare decisis*, and as having less ten-
dency to unsettle titles.

But the question here is, whether the court ought, under
the circumstances, to specially apply the rule to express ad-
judications in respect to the same title and property involved
in the present controversy.   Nearly seventeen years have ex-
pired since the first, and nearly ten years since the last decis-
ion was made.  The record affirmatively informs us, that the
defendants purchased, and paid full value for the property, on
the faith of these decisions.  In the last case, it was said em-
phatically, that under the decision in the previous case, "the
estate of Thomas Bibb, Jr., has forever lost the lands in con-
troversy, under the ruling in that case, that the title in him
became extinct at his death, because the limitation was effect-
ive."  The public generally had a right to rely on such de-
clared adjudications as conclusive of the title.  If it should
now be held that the plaintiff is entitled to recover, because
the same limitation over is inoperative to divest the title of
Thomas Bibb, Jr., it may now be said with more certainty and
emphasis, than when said : "This would present a result at
least somewhat startling.  The repose of society, and the sta-
bility of titles, plead earnestly for an adherence to a decision
of this, the court of last resort, when it has, after most ex-
haustive argument, solemnly construed a muniment of title."

The rule of *stare decisis* is founded on principles of conserva-
tism ; not intended to prevent progress in the science of the
law, and such modifications and adaptations of judicial decis-
ions as may be required by the varying and advancing condi-
tions of society and industries ; but most beneficial, when
applied in the exercise of a sound and wise discretion.  The
rule does not rest on a disaffirmance of judicial fallibility.  Its
invocation implies, that former decisions may be erroneous,
adherence to which, though erroneous, will be productive of
much less evil than a departure therefrom.  Neither does the
rule disregard the importance and necessity of correct deter-
minations of the law ; nor require its perpetuated subversion,
unless acquiescence in such supervision is requisite to the main-
tenance of social order, public peace, and confidence.  Though
a decision may involve private or public rights, when it can
not be truly said to have been acquiesced in, or to have become
a rule of property, it is both the right and the duty of the court

[Bibb v. Bibb.]

to re-examine the questions, when again properly presented. *Pratt v. Brown*, 3 Wis. 609. But, when even a single decision, and especially repeated decisions, have stood for such length of time, that the rule thereby established may have become a rule entering into, and acted upon in the execution of contracts and the transactions of business, or may have constituted a rule of property, or a muniment of title, it is the imperative duty of the court to suffer it to remain undisturbed. The quieting of litigation; the public peace and repose; respect for the judicial administration of the law, and confidence in its reasonable certainty, stability, and consistency, and all considerations of public policy call for permanently upholding acts done, contracts executed, rights vested, and titles to property acquired on the faith of decisions of the court of last resort. The decisions referred to construed a muniment of title to particular property. Rights have been acquired on the faith of them. To overturn them now, in a controversy involving the same muniment of title, and the same property, would tend to impair confidence in, and bring reproach upon the administration of justice; and would verify the observation of a learned author, that in such case, "even a decision of a court of justice upon the very identical title would be nothing more than a precarious temporary security." Though the plaintiff had no opportunity of being heard, and the decisions are not *res adjudicata*, they have become a rule of property with reference to the particular lands; and every consideration of right, justice and policy, exacts in this case a special application of the rule of *stare decisis*. There must be a period in the course of controverted and litigated titles to property, when the question shall be considered finally settled. That period has arrived in reference to this particular property. While, therefore, in the state of the four previous decisions as to the construction and operation of the statute, we should not regard re-examination as closed in respect to a distinct muniment of title, and to different property; when there have been two adjudications in reference to the particular muniment of title, and the particular property, upon which parties have acted, and money has been expended in good faith, we must regard the title sealed to further inquiry. The integrity and conservatism of judicial administration forbid the re-examination of a question, which will retroact to the subversion of title, acquired under such circumstances.—*Hihn v. Courtis*, 37 Cal. 398; *Hardigree v. Mitchum*, 51 Ala. 151; *Ala. L. Ins. & Trust Co. v. Boykin*, 38 Ala. 510; *Hibler v. McCartney*, 31 Ala. 501.

Affirmed.