# Farrior *v.* New England Mortgage Security Co.

*Bill in Equity for Foreclosure of Mortgage.*

1.  *Conveyance by husband to wife; retroactive judicial proceedings.*  By the later decisions of this court, a conveyance by the husband to the wife, the consideration of which is an indebtedness for moneys belonging to her statutory estate which he has received and converted to his own use, does not change the character of her estate, nor give her power to charge the property as an equitable estate ; but the court, while adhering to these decisions, will not allow them to operate retroactively, thereby invalidating contracts made on the faith of the former decisions while in force.

[Farrior v. New England Mortgage Security Co.]

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. JOHN A. FOSTER.

In May, 1883, James S. Farrior and Minnie E. Farrior, his wife, borrowed some money from the appellant loan company; and to secure the payment thereof, executed their joint notes and joint mortgage on certain lands, among which were included land belonging to the separate estate of the said Minnie E. Farrior. This indebtedness, as evidenced by the note and secured by the mortgage, was not paid; and the loan company filed its bill of complaint, asking for a foreclosure of said mortgage. This bill was several times successfully demurred to, and was finally so amended as to aver and set out as an exhibit the deed by which the said Minnie E. Farrior held and claimed title to the part of the said lands averred to belong to her, and alleged that the said deed created in her an equitable and not a statutory separate estate under the laws of this State. This bill as last amended was demurred to principally on the ground that it showed that it was an attempt to foreclose a mortgage given on the statutory separate estate of a married woman. A cross-bill was also filed by Minnie E. Farrior, alleging that the said mortgage was a cloud upon her title; and prayed that the same be cancelled as to the lands claimed by her. This cross-bill was demurred to by the complainant. The demurrer to the original bill was overruled, and the demurrer to the cross-bill was sustained. The recitals of the deed from James S. Farrior to his wife, Minnie E. Farrior, are sufficiently set forth in the opinion of this court. This appeal is prosecuted by the defendants in the court below, from the decree of the chancellor overruling the demurrers to the original bill as last amended, and sustaining the demurrer to the cross-bill; and the said decrees are assigned as error here. The only question presented by several assignments of error, based on the rulings of the chancellor upon the demurrers, is as to the validity of the mortgage given by Farrior and his wife to the complainant, and this depends upon whether the deed from James S. Farrior to his wife, Minnie E. Farrior, created in her a statutory or equitable separate estate.

WATTS & SON, for appellants, contended that the deed created in the wife a statutory separate estate, which rendered the mortgage void as to her property, and cited *Loeb v. McCullough*, 78 Ala. 533; *Parker v. Marks*, 82 Ala. 548; *Jordan v. Smith*, 83 Ala. 302.

WEBB & TILLMAN, *contra.*—At the time and prior to the making of the mortgage the Supreme Court had declared that

12

a deed, like the one involved in this suit, created in the wife an equitable separate estate.—*Goodlett v. Hansell,* 66 Ala. 151; *Masson v. Kelly,* 70 Ala. 85: These decisions being of force at the time of the execution of the mortgage sought to be foreclosed, no subsequent judicial decisions, overruling the former construction of the statute in reference to married women, can affect the rights of the contracting parties. *Gelpck v. City of DuBuque,* 1 Wall. (U. S.) 208; *Alcott v. Supervisors,* 16 Wall. 678; *Douglass v. County of Pike,* 101 U. S. 686; *Taylor v. Ypsilanti,* 105 U. S. 72; *County of Rawls v. Douglass,* 105 U. S. 732.

COLEMAN, J.—Many of the questions raised by the pleadings in this case, have been considered and adjudicated in recent decisions in this court.—*New Eng. Mort. Sec. Co. v. Ingram,* 91 Ala. 337; 8 So. Rep. 140; *Nelms v. Edinburgh Amer. Land Mort. Co., supra;* 8 So. Rep. 141; *Amer. Freehold Land Mort. Co. v. Sewell, supra;* 8 So. Rep. 143.

The one question, of supreme importance presented for review in this record, did not arise in either of the foregoing cases cited.

On or about May 1st, 1883, in order to procure a loan from the New Eng. Mort. Security Co., J. S. Farrior and his wife, Minnie E. Farrior, executed a promissory note to the company, and secured the same by mortgage on certain lands in Lowndes County, Alabama. By deed of conveyance executed by J. S. Farrior to his wife, on the 3d of October, 1882, a part of these lands were conveyed to her to pay and satisfy an indebtedness of the husband to the wife. The consideration of this deed from Farrior to his wife is stated to be, for "two thousand and seven dollars, the amount of money and property used and converted of the *corpus* of the separate estate of the wife." At the time of the execution of the note and mortgage to secure the loan, the wife had no legal capacity to bind her statutory estate by mortgage or other contract, but she could bind her equitable separate estate as if she were a *feme sole.*

By repeated decisions of this court, in reference to the married woman's law creating in the wife a statutory separate estate, it was held that a conveyance of lands from the husband to the wife vested in the wife an equitable separate estate, and this was the effect of such conveyance, notwithstanding the consideration was property, the *corpus* of her statutory estate, or indebtedness of the husband on account of money, the *corpus* of her statutory estate, used and converted by him.

These decisions of the Supreme Court of this State, thus construing the statute, and declaring the character of the estate

conveyed to the wife, and her capacity to incumber it by contract, were in force at the time the note and mortgage involved in the present case were executed.—*Turner v. Kelly*, 70 Ala. 85; *Goodlett v. Hansell*, 66 Ala. 161; *McMillan v. Peacock*, 57 Ala. 129.

Subsequent to this time but before the filing of complainant's bill, the Supreme Court of the State overruled these authorities, and held, that "by no contract between the husband and wife, can her statutory separate estate be converted into an equitable estate, with power in the wife to charge it;" and expressly and "intentionally" overruled the former decisions which hold to the contrary.—*Loeb v. McCullough*, 78 Ala. 533; *Jordan v. Smith*, 83 Ala. 302; *Parker v. Marks*, 82 Ala. 548. The reasons, *pro* and *con*, upon which the different decisions rest, need not be here reconsidered. The court adheres to the later decisions, and reaffirms the rule of law declared in *Loeb v. McCullough*, *supra*.

The question presented for consideration is, the effect of the later decisions upon contracts and rights of property acquired under the statute as construed by the former decisions, and while those decisions were in force.

It has been repeatedly declared by the highest tribunals in this country, and many eminent jurists, that a fixed and received construction of a statute, made by the Supreme Court of the State, makes a part of such statute law.—*Green v. Neal*, 6 Pet. 297; *Shelby v. Guy*, 11 Wheat. 368.

In the case of the *Ohio Life Ins. Co. v. Debolt*, 16 How. (U. S.) 432, Taney, C. J. held "that the sound and true rule was, that if the contract when made was valid by the laws of the State, as then expounded by all the departments of its government, and administered in its courts of justice, its validity and obligation can not be impaired by any subsequent act of the legislature, or decisions of its courts, altering the construction of the law." In the case of *Taylor v. Ypsilanti*, 105 U. S. 72, this authority was re-affirmed, and also the case of *Douglass v. The County of Pike*, reported in 101 U. S. Rep. 677, in which it was held, that "the true rule is to give a change of judicial construction in respect to a statute, the same operation on contracts and existing contract rights that would be given to a legislative amendment, that is to say, make it prospective but not retroactive. After a statute has been settled by judicial construction the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself; and a change of decision is to all intents and purposes as an amendment of the law by means of a legislative enactment. The following authorities

hold the same rule.   *Olcot v. Supervisors*, 16 Wal. 689 ; *Fair-field v. County of Gallatin*, 100 U. S. Rep. 52 ; 18 Wal. 71 ; 1 Wal. 206.   Sutherland on Statutory Construction, § 319, says "a judicial construction of a statute  becomes a part of it, and as to rights which accrue afterwards it should be adhered to for the protection of these rights.   To divest them by a change of the construction is to legislate retroactively.   The constitutional barrier to legislation impairing the obligation of contracts, applies also to decisions altering the law as previously expounded so as to  affect the obligations of existing contracts made on the faith of the earlier adjudications."

In the case of *Geddes v. Brown*, 5 Phila. 180, the facts were, that in the year 1848, the legislature  passed a law enlarging the power of married women over their property, and enabling them to deal with it in many  respects as if they were single. The Supreme Court of the State declared that under this law a married woman might convey or encumber property settled to her separate use.   On the faith of this case, the mortgagee took his mortgage.   By a subsequent decision of the Supreme Court the former decision was overruled, and it was held that property settled to the separate use of a married woman could not be alienated unless the power was conferred by the deed. The decision of the court in *Geddes v. Brown*, was, (and it is only the conclusion of the court that we cite,) that a party who acts in accordance with the law as laid down by the highest tribunal in the State, while it is still law, shall not suffer because it is subsequently  set aside and another and inconsistent rule substituted for it.   The validity of the mortgage was upheld in the case cited.

Endlich on the Interpretation of Statutes, § 363, holds that a judicial interpretation of a statute becomes a part of the statute law, and a change of it is, in practical effect, the same as a change of the statute.   The author cites, with other cases to sustain the text, the case of *Geddes v. Brown, supra.*

It is contended that the reverse of these principles has been recognized, if not fairly held, in this State; and we have been referred to the cases of *Prince v. Prince*, 67 Ala. 565, and *Boyd v. The State*, 53 Ala. 608.

In the first case the contention was that, as the statute had not been construed when the mortgage which gave rise to the litigation was executed, "the grave doubt among members of the legal profession" as to the proper construction of the statute was a sufficient consideration to uphold a compromise of the mortgage debt.   The court held that every one was required to know the proper construction of the statute, applying the maxim, *Ignorantia facti  excusat; ignorantia juris non*

[Farrior v. New England Mortgage Security Co.]

*excusat.* The question we are considering was not before the court in that case. In the latter case *Boyd v. The State*, 53 Ala. 608, the present Chief Justice rendered the opinion, and, on an application for a re-hearing, expressly called attention to the fact that a different principle controlled the conclusion of the court in the Boyd case, from that held in the authorities referred to in this opinion, and declared that "in none of them was it decided or contended that any right existed or could be maintained which rested alone on a statute which the court pronounced unconstitutional." This case was affirmed by the Supreme Court of the United States, 94 U. S. 648, in which it was held that "the constitutionality of the act was not drawn in question" by the previous decisions of the State Court so as to necessitate a decision of that question.

The case of *Bibb v. Bibb*, 79 Ala. 444, though limiting the principle in its application to the subject matter of the particular litigation, clearly recognized the rights of parties acquired under decisions of the Supreme Court in the following pertinent language: "The quieting of litigation; the public peace and repose; respect for judicial administration of the law, and confidence in its reasonable certainty, stability and consistency, and all considerations of public policy call for permanently upholding acts done, contracts executed, rights vested, and titles to property acquired, on the faith of decisions of the court of last resort."

Persons contracting are presumed to know the existing law, but neither they nor their legal advisers are expected to know the law better than the courts, or to know what the law will be at some future day. Any principle or rule, which deprives a person of property acquired by him, or the benefit of a contract entered into in reliance upon and strict compliance with the law in all respects as interpreted and promulgated by the court of last resort, at the time of the transaction, and no fault can be imputed to him in the matter of the contract, unless it be held a fault not to foresee and provide against future alterations in the construction of the law, must be radically wrong. Such a principle, or rule of law would clog business transactions, unsettle titles, and destroy all confidence in the decisions of the Supreme Court of the State. We hold the doctrine to be sound and firmly established by the decisions of the Supreme Court of the United States, and enunciated by many eminent text writers, that rights to property, and the benefits of investments acquired by contract, in reliance upon a statute as construed by the Supreme Court of the State, and which were valid contracts under the statute as thus interpreted, when the contract or investments were made, can not be annulled or

divested by subsequent decisions of the same court overruling the former decisions.

That as to such contracts or investments, it will be held that the decisions which were in force when the contracts were made, had established a rule of property, upon which the parties had a right to rely, and that subsequent decisions can not retroact so as to impair rights acquired in good faith under a statute as construed by the former decisions. The application of these principles upholds the validity of the mortgage as shown by the pleadings, and lead to an affirmance of the decision of the lower court.

Affirmed.