367 So.2d 948 (1979)
John A. JACKSON, Jr., et al
v.
Jesse E. FILLMORE.
77-389.
Supreme Court of Alabama.
January 19, 1979.
Rehearing Denied February 9, 1979.
James E. Hart, Jr., Brewton, for appellants, John A. Jackson, Jr. and Thomas E. McMillan, Jr.
Lee M. Otts and John Thaddeus Moore, Brewton, for appellee, Jesse E. Fillmore.
T. M. Brantley of Brantley & Vargo, Bay Minette, for appellee, Mary E. Jackson.
BLOODWORTH, Justice.
The sole issue in this case is whether the rule announced in Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972), should be applied retrospectively or prospectively to the facts of this case. We hold that it should be applied prospectively and affirm.
The facts, as clearly and concisely stated in the trial court's judgment, are as follows:
"This is a suit to quiet title brought by Jesse E. Fillmore against John A. Jackson, Jr., Thomas E. McMillan, Jr., Mary E. Jackson *949 and others, seeking to quiet title against the surface of lands described in his Bill of Complaint and an undivided one-half interest in the minerals, subject to a mortgage and an oil lease.
"The Defendant, Mary E. Jackson, by her answer, claimed an undivided one-half interest in the minerals under said property. By their answer, John A. Jackson, Jr. and Thomas E. McMillan, Jr. each claimed an undivided one-fourth interest in the surface and minerals of the property. Other defendants by their answers claimed various leasehold and royalty interest in said property. This cause was set for a hearing on the 14th day of October, 1977. Testimony was taken ore tenus and the matter was submitted to the Court on the pleadings of all the parties; testimony, which was taken ore tenus, documentary evidence attached to the pleading and introduced at the time of the trial and request for an admission of facts, and facts admitted . . . .
"Prior to December 1, 1966, John A. Jackson was the owner in fee simple of the 160 acres of land which is the subject matter of this suit.
"By warranty deed dated December 1, 1966, John A. Jackson and wife, Mary E. Jackson conveyed this land to John A. Jackson and Mary E. Jackson as joint tenants with right of survivorship. Said deed was prepared in this manner by Hugh M. Caffey, Jr., Attorney at Law, Brewton, Alabama, at the request of both Mr. and Mrs. Jackson. From the testimony in this cause it appears that Mr. Caffey explained to Mr. and Mrs. Jackson that title would be held by them jointly during their lifetime and on the death of either, the survivor would then own the entire interest in the property.
"Subsequently, on July 17, 1967, John A. Jackson executed a deed which purported to convey his interest in subject property to his son, John A. Jackson, Jr. On the date of this deed to John A. Jackson, Jr., the grantor, John A. Jackson, was legally married to Mary E. Jackson, and this deed was not executed by Mary E. Jackson. No consideration was paid in connection with this conveyance.
"John A. Jackson (also known as John Allen Jackson), who was the husband of Mary E. Jackson, died intestate on January 27, 1968.
"In August, 1968, Jesse Fillmore entered into an agreement with Mary E. Jackson, whereby Mary E. Jackson agreed to sell subject property to Jesse E. Fillmore for the sum of $16,200.00, with the sales transaction to be closed on or before September 16, 1968. Mr. Fillmore paid Mrs. Jackson $500.00 and on August 16, 1968, Mrs. Jackson executed a warranty deed conveying said property to Mr. Fillmore. This deed was left with Mrs. Jackson's attorney, Hugh M. Caffey, Jr., Brewton, Alabama, to hold in escrow pending receipt of the balance of the purchase money.
"The Citizens-Farmers & Merchants Bank of Brewton, Alabama, (now First National Bank) agreed to loan Mr. Fillmore the necessary funds with which to purchase subject property. As security Mr. Fillmore was to execute a mortgage to the bank listing as security subject property.
"Mr. Fillmore requested Mr. Caffey to examine the title to subject property and to address his opinion to the Citizens-Farmers & Merchants Bank. Mr. Caffey did render an opinion to the bank on September 9, 1968. In paragraph 2 of this opinion this attorney stated as follows:
"`By deed dated December 1, 1966, and recorded on February 10, 1967, in Deed Book 221, page 293, John A. Jackson and Mary A. Jackson conveyed the above described real estate to John A. Jackson and Mary A. Jackson jointly for life with the remainder to the survivor of them. Thereafter and on July 17, 1967, by warranty deed recorded on August 9, 1967, John A. Jackson attempted to convey his interest in subject real estate to his son, John A. Jackson, Jr., also known as John Allen Jackson. I personally know that *950 John A. Jackson, Sr. died on January 27, 1968, and it is my opinion that in spite of his conveyance to John A. Jackson, Jr., as above pointed out, Mary E. Jackson under the express terms of the survivorship deed executed on December 1, 1967, acquired an absolute title in and to the above described real estate and that her present ownership is subject only to the mortgage mentioned as exception number 1.'
"It was stipulated by the parties that Hugh M. McCaffey, Jr. was well qualified as a real estate and title attorney and could be considered an expert in this field of the law.
"The testimony in this cause further reflects that Mr. Caffey at the request of Jesse Fillmore researched the law pertaining to survivorship deeds prior to rendering the title opinion mentioned . . . above and in reliance upon the law of this State at that time as set out in the case of Bernhard v. Bernhard, 278 Ala. 240, 177 So.2d 565 [1965] and in many other cases on this subject by the Appellate Courts of this State this attorney prepared and delivered to the Plaintiff in this cause a title opinion stating that in spite of an attempted conveyance to John A. Jackson, Jr. that Mary E. Jackson under the law of this State and under the express terms of the survivorship deed executed on December 1, 1966, from John A. Jackson and Mary E. Jackson to John A. Jackson and Mary E. Jackson as joint tenants with right of survivorship that upon the death of John A. Jackson (Sr.), Mary E. Jackson acquired an absolute title to subject property.
"It further appears from the undisputed testimony in this cause that immediately after the closing of the transaction wherein on September 15, 1968, Mary E. Jackson sold all of the surface of the lands to the Plaintiff in this cause for $16,200.00 that said Plaintiff Jesse E. Fillmore went into possession of said property and since said purchase has expended many thousands of dollars and considerable time and labor in improving said property and rendering it more suitable for farming."
There is an additional fact which should be noted. On September 10, 1975, John A. Jackson, Jr., and his wife purportedly conveyed an undivided one-fourth interest in the property to McMillan.
John A. Jackson, Jr., and those claiming under him, contend that the principle established in Nunn v. Keith, supra, that a statutory joint tenancy with right of survivorship is destructible as at common law, should be applied retrospectively. Applying this principle, they contend the 1967 deed from John A. Jackson to John A. Jackson, Jr., severed the joint tenancy and destroyed Mary Jackson's right of survivorship. Therefore, Mrs. Jackson's subsequent deed to Fillmore would convey only a one-half interest. We cannot agree with this contention.
All of the transactions described above, with the exception of the 1975 conveyance to McMillan, occurred after the decision in Bernhard and before the decision in Nunn v. Keith. The law as declared in Bernhard was that a statutory joint interest with survivorship was indestructible without consent of all the joint owners. This was a rule of property in Alabama up until our holding in Nunn v. Keith, overruling Bernhard, and this was the law relied upon by Fillmore when he purchased the property and by the bank which financed the purchase.
When a rule established by judicial decision has existed long enough to be relied upon by those acquiring rights to, or title in, certain property, courts should be loath to destroy such rights when overruling prior decisions. See Majestic Coal Co. v. Anderson, 203 Ala. 233, 82 So. 483 (1919) and Bibb v. Bibb, 79 Ala. 437 (1886). In McVay's Administrator v. Ijams, 27 Ala. 238, 243 (1855), this Court held:

*951 " . . . When, however, a rule of property has been adopted by judicial decision, and may reasonably be supposed to have entered into the business transactions of the country, it is our duty to adhere to it, lest we should overturn titles founded upon it. . . ."
We believe this principle to be as equally applicable to those cases which overrule prior cases as to those cases which refuse to do so.
Although it dealt with contract rights, the opinion in Farrior v. New England Mortgage Security Co., 92 Ala. 176, 179-82, 9 So. 532, 532-33 (1891), expresses sound and settled principles of law which apply to the property rights in the present case:
"The question presented for consideration is the effect of the later decisions upon contracts and rights of property acquired under the statute as construed by the former decisions, and while those decisions were in force.
"It has been repeatedly declared in repeated decisions by the highest tribunal in this country, and many eminent jurists, that a fixed and received construction of a statute, made by the Supreme Court of the State, makes a part of such statute law. . . ."
* * * * * *
"The case of Bibb v. Bibb, 79 Ala. 444, though limiting the principle in its application to the subject-matter of the particular litigation, clearly recognized the rights of parties acquired under decisions of the Supreme Court in the following pertinent language: `The quieting of litigation; the public peace and repose; respect for judicial administration of the law, and confidence in its reasonable certainty, stability, and consistency, and all considerations of public policy call for permanently upholding acts done, contracts executed, rights vested, and titles to property acquired on the faith of decisions of the court of last resort.'
"Persons contracting are presumed to know the existing law, but neither they nor their legal advisers are expected to know the law better than the courts, or to know what the law will be at some future day. Any principle or rule which deprives a person of property acquired by him, or the benefit of a contract entered into, in reliance upon and strict compliance with the law in all respects as interpreted and promulgated by the court of last resort at the time of the transaction, and no fault can be imputed to him in the matter of the contract, unless it be held a fault not to foresee and provide against future alterations in the construction of the law, must be radically wrong. Such a principle or rule of law would clog business transactions, unsettle titles, and destroy all confidence in the decisions of the Supreme Court of the State. We hold the doctrine to be sound and firmly established by the decisions of the Supreme Court of the United States, and enunciated by many eminent text-writers, that rights to property, and the benefits of investments acquired by contract, in reliance upon a statute as construed by the Supreme Court of the State, and which were valid contracts, under the statute as thus interpreted, when the contract or investments were made, can not be annulled or divested by subsequent decisions of the same court overruling the former decisions." [Emphasis ours.]
See also Peddycoart v. City of Birmingham, 354 So.2d 808, 815 (Ala.1978) (Torbert, C. J., concurring specially), where the Chief Justice Torbert pointed out that "[t]he principle of prospective application is not of recent vintage, but was recognized by this court as early as 1890. Farrior v. New England Mortgage Security Co., 92 Ala. 176, 9 So. 532 (1890)."
In light of the evidence in this case demonstrating reliance upon the rule of Bernhard, the decision of the trial court to apply Nunn v. Keith in this case prospectively, *952 rather than retrospectively, is correct and is due to be affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, JONES, ALMON, EMBRY and BEATTY, J J., concur.
MADDOX and SHORES, JJ., dissent.
MADDOX, Justice (dissenting).
I thought Nunn v. Keith, 289 Ala. 518, 268 So.2d 792 (1972) had given Bernhard v. Bernhard, 278 Ala. 240, 177 So.2d 565 (1965), a decent burial; now, the majority resurrects it.
In my opinion, Nunn applied retroactively. Justice Coleman, in his dissent in Nunn, argued that holders of survivorship deeds were entitled to rely on Bernhard as "defining the rights which the grantees received by such deeds." 289 Ala. at 427, 268 So.2d 801. Therefore, even though the Nunn opinion does not address its retroactivity, I think the dissent in Nunn leaves little doubt that the majority in Nunn intended for that decision to overrule Bernhard completely. Consequently, I dissent.
SHORES, J., concurs.