I respectfully dissent. The majority opinion, on the authority of Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), holds that henceforth "Alabama trial courts 'have jurisdiction to require parents to provide post-minority support for college education to children,' " whether the parents are divorced or have never married. This holding finds no support in statutory law. On the contrary, it is forbidden by statute. The holding of the majority, therefore, violates the applicable statutory law and there are grave questions regarding its constitutionality. Because of the seriousness of these criticisms, I shall set forth my reasoning in some detail.
 I. Statutory Analysis
The jurisdiction of trial courts to order child support for illegitimate children is currently defined by the Alabama Uniform Parentage Act, Ala. Code 1975, §§ 26-17-1 to -21 ("Parentage Act"). The Parentage Act was drafted specifically to provide a "civil cause of action in the courts of this state for the determination of paternity for the purposes of support and other reasons." Act No. 84-244, 1984 Ala. Acts 375. Section26-17-2 declares the object of the Act, which is to apply the consequences of the "parent and child relationship . . . equally to every child and to every parent, regardless of the marital status of the parents." Most pertinent for our discussion is § 26-17-8(b), which provides that "[a]n action to determine paternity for the purposes of obtaining support shallnot be brought after the child attains age 19." Although it is unnecessary to look further than this section to conclude that the legislature intended to remove from trial courts the jurisdiction to order post-minority support for illegitimate children, an examination of the legislative background of the Parentage Act is enlightening.
The first predecessor of the Parentage Act was passed on December 13, 1811, by the General Assembly of the Territory of Mississippi. The Act of 1811 Concerning Bastardy, Act No. 7 of the Mississippi Territorial Legislature of 1811 ("Bastardy Act"), which was the first statute aimed at providing support for illegitimate children in Alabama, prescribed a procedure for the determination of paternity.[1] In relevant part, the Act provided:
 "[Section 1] When any single woman, who shall be pregnant, or delivered of a child, which by law would be deemed a bastard, shall make complaint to any one or more justices of the peace for the county, where she may be so pregnant or delivered, as aforesaid, and shall accuse any one of being the father of such child, it shall be the duty of such justice or justices, to issue process to the sheriff . . . of such county, against the person so accused as aforesaid, and cause him to be brought forthwith before him.
 "[Section 2] Upon his appearance, it shall be the duty of the said justice or justices, to examine the said female, in the presence of the man alleged to be the father of the child, touching the charge against him; and if said justice or justices shall be of opinion, that sufficient cause appears, it shall be his or their duty to bind the said person, so accused, in bond, with good and sufficient security, to be and appear before the next county court. . . . *Page 612 
 "[Section 3] The county court aforesaid, at their next term, shall have full and complete cognizance and jurisdiction of said charge of bastardy. And the court shall cause an issue to be made up, 'whether the reputed father is the real father of the child, or not;' which issue shall be tried by a jury. . . ."
Section 4 of the Act, which contained the relevant support provision, stated:
 "If the issue is found against the defendant, or imputed father, then he shall be condemned by the judgment of said court, to pay, not exceeding fifty dollars, at the discretion of said court, yearly, for ten years, towards maintenance and education of said child; and the said imputed father shall give bond and security, for the due and faithful payment of said sum of money. . . ."
(Emphasis added.)[2]
The provision requiring support payments was first codified at Ala. Code 1852, § 3808. Section 3808 required the defendant to "enter into bond and security . . . in the sum of one thousand dollars, payable to the state, and conditioned to pay such sum, not exceeding fifty dollars a year . . . for ten years, to the judge of probate of the county, for the support and education of the child." Section 3808 passed into the next five successive Codes without substantial change. See Ala. Code 1867, § 4405; Ala. Code 1876, § 4080; Ala. Code 1887, § 4854; Ala. Code 1896, § 4393; and Ala. Code 1907, § 6376.
In 1915, the legislature enacted what was to become an important supplement to the limited protection afforded illegitimate children by the Bastardy Act. Act No. 498, 1915 Ala. Acts 560 ("Non-support Act"), criminalized a parent's failure to support "his or her child, or children, under theage of sixteen years." (Emphasis added.) The Act further provided:
 "At any time before the trial, or pending an appeal, . . . the judge of said court may enter such temporary orders as may seem just, providing for the support of the neglected wife or children, or both. . . .
 "Before the trial, with the consent of the defendant, or at the trial, on entry of a plea of guilty, or after conviction, instead of imposing the penalties hereinbefore provided or in addition thereto, the judge in his discretion, having regard to the circumstances, and to the financial ability, or earning capacity, of the defendant, shall have the power to make an order . . . directing the defendant to pay a certain sum periodically, either directly, or through a probation officer, to the wife, or to the guardian, curator, or custodian of the said minor child . . . and to release the defendant from custody on probation. . . ."
(Emphasis added.) Four years later, the legislature amended the Act to raise the age limit for receiving support to 18 years.
Act No. 181, 1919 Ala. Acts 176, codified at Ala. Code 1923, §§ 4480-4495.
The Non-support Act supplied a significant disincentive for desertion and neglect of minor children. The Act was, however, initially held to be inapplicable to illegitimate children.Ex parte Newsome, 212 Ala. 168, 102 So. 216 (1924). Consequently, the Bastardy Act's $50 per year support provision continued to be the illegitimate minor child's only remedy.
This impediment was removed when, in 1923, § 4479 was added to the Code. Ala. Code 1923, § 4479 defined the word "parent," for the purpose of the Non-support Act, to "include [the] natural legal parent or parents, or other persons who shall have legally acquired the custody of such child or children, and the father of such child or children, though born out oflawful wedlock." (Emphasis added.) Thus, for the first time in this state, through the combination of the Bastardy Act's mechanism for proving paternity with the Non-support Act's flexible power to provide meaningful support, illegitimate children under 18 years of age had legal recourse to significant subsistence. Law v. State, 238 Ala. 428, *Page 613 
430, 191 So. 803, 804 (1939); Coan v. State, 224 Ala. 584,585, 141 So. 263, 263-64 (1932).
For the next 38 years, these pertinent sections of the Bastardy Act and the Non-support Act, which passed into the 1940 Code as Tit. 6, § 12, and Tit. 34, §§ 89, 90, and 98, respectively, provided complementary benefits for illegitimate children. See Law v. State, supra (paternity must be proven under provisions of Bastardy Act before support could be awarded under provisions of Non-support Act).
In 1961, the legislature replaced the Bastardy Act with Act No. 295, 1961 Ala. Acts 2353, codified at Ala. Code 1940 (Recomp. 1958), Tit. 27, §§ 12(1)-(9) (Cum.Supp. 1973) ("Paternity Act"). The Paternity Act, like the Bastardy Act, provided a mechanism for proving paternity in "any court of the county where [the complainant resided], having jurisdiction . . . to try and punish parents for the offenses of desertion and non-support, as provided for under Title 34, sections 89 to 104, inclusive." Ala. Code 1940 (Recomp. 1958), Tit. 27, § 12(1). Moreover, the Paternity Act also incorporated some of the language and much of the substance of the Non-support Act. For example, the Paternity Act provided:
 "If a reputed father is found guilty or admits the truth of the complaint, he shall be adjudged to be the father of such child, and thenceforth shall be subject to all obligations for the care, maintenance, and education of such child and to all the penalties for failure to perform the same which are or shall be imposed by law upon the father of a legitimate child of like age and capacity. Judgment may be for periodic payments which may vary in amount. The court may order payments to be made to the mother or other persons or agency designated to administer them under the supervision of the court."
Tit. 27, § 12(4) (emphasis added). The legislature did not, atthat time, incorporate into the Paternity Act the Non-support Act's age limitation.
In 1977, the legislature raised the age limit on the right of illegitimate children to receive support from 18 to 19 years, when it replaced § 90 of the Non-support Act with the act that became Ala. Code 1975, § 13A-13-4. That section now provides:
 "(a) A man or woman commits the crime of nonsupport if he or she intentionally fails to provide support which that person is able to provide and which that person knows he or she is legally obligated to provide to a dependent spouse or child less than 19 years of age.
". . . .
 "(c) 'Child' includes a child born out of wedlock whose paternity has been admitted by the actor or has been established in a civil suit."
(Emphasis added.) The remainder of the Non-support Act, with the exception of § 91, still exists as Ala. Code 1975, §§30-4-50 to -65.
Seven years later, the Paternity Act was superseded by the Parentage Act, the legislature's most recent statement on the subject of support for illegitimate children. The Parentage Act, like its predecessors, sets forth procedures for a determination of paternity and provides for court-ordered support following such a determination. See Ala. Code 1975, § 26-17-14. However, unlike its predecessors, the Bastardy Act and the Paternity Act, the Parentage Act's provision tying actions for support to the age of majority of the child nowparallels the Non-support Act's age limitation on the right toreceive child support. In view of the extensive, complementary history and the interplay of the Parentage Act's predecessors with the Non-support Act and its predecessors, the inescapable effect of this section is to remove from trial courts the jurisdiction to order support for illegitimate children past the legislatively prescribed age of majority.
At this juncture, it hardly seems necessary to point out that these are matters with which the courts have nothing to do. The "power to raise or lower the [age of majority] isexclusively reserved to the legislature and outside the authority of the courts." State ex rel. Taylor v. Nelson, *Page 614 535 So.2d 178, 179 (Ala.Civ.App. 1988) (emphasis added);Davenport v. Davenport, 356 So.2d 205, 210 (Ala.Civ.App. 1978) ("fixing of the age of majority is within the sphere of the legislature not the courts"); see also Hutchinson v. Till,212 Ala. 64, 65, 101 So. 676, 676 (1924) ("Legislature has full power to prescribe" age of majority).
In extending the "college education exception" set forth inEx parte Bayliss, 550 So.2d 986 (Ala. 1989), to confer jurisdiction on Alabama trial courts to order post-minority support for illegitimate children, the majority opinion violates both the spirit and the letter of § 26-17-8. To be sure, the extension of Bayliss to encompass the situation presented in this case follows from the amalgamation of theBayliss doctrine with the equal protection guarantees of both the federal and state constitutions. The Bayliss doctrine, therefore, must be reconsidered in light of the equal protection issues raised by its operation on the facts of this case.
 II. Equal Protection
The well-established rule in this state was that "[a] father [was] bound, by the common law, to support and educate his children during their minority." Beasley v. Watson, 41 Ala. 234,240 (1867) (emphasis added); see Alston v. Alston, 34 Ala. 15,27 (1859) ("It is a general rule of law, that the father is bound to support his minor children, if able to do so, even though they have property of their own" (emphasis added));Godfrey v. Hays, 6 Ala. 501, 502 (1844) ("From the obligation of the father to support his children during minority, he is entitled to their services, and to the earnings of their labor" (emphasis added)).
In Bayliss, a majority of this Court held that a trial court had jurisdiction to order a divorced, noncustodial parent to pay expenses incurred by a 19-year-old child in pursuit of a college education if petition had been made for such support before the child reached age 19. In carving out this exception to the general rule, the majority correctly recognized that "any jurisdiction of a trial court to require a parent to provide post-minority support for a child's college education is conferred by statutes, expressly or by implication."Bayliss, 550 So.2d at 989. The majority further acknowledged that the "Legislature of Alabama [had] not enacted a specific statutory change in its domestic relations laws to permit post-minority support for college education." It proceeded to find such jurisdiction, however, in the "absence of restrictive language in Alabama Code 1975, § 30-3-1." Bayliss, 550 So.2d at 989 (emphasis added).
In doing so, the majority overlooked the fact that " 'a fixed and received construction of a statute, made by the Supreme Court of the State," becomes a part of the statute. Jackson v.Fillmore, 367 So.2d 948 (Ala. 1979), quoting Farrior v. NewEngland Mortgage Security Co., 92 Ala. 176, 9 So. 532 (1891);Lawson v. Swift, 280 Ala. 227, 191 So.2d 379 (1966). This Court has taken numerous opportunities to pass upon the meaning of the word "children" in § 30-3-1 since the section's predecessor first appeared as Ala. Code 1852, § 1977. Until Ex parteBrewington, 445 So.2d 294 (Ala. 1983), this Court had construed that section as contemplating minor children. Reynolds v.Reynolds, 274 Ala. 477, 149 So.2d 770 (1963), overruled by Exparte Brewington, 445 So.2d 294 (Ala. 1983); Murrah v. Bailes,255 Ala. 178, 50 So.2d 735 (1951). This consideration appears to have been overlooked in favor of the concededly marginal inference that could be drawn from the fact that the legislature did not immediately react to the novel construction employed by Brewington.[3] Ex parte Bayliss, 550 So.2d at 993-94.
No sooner was Bayliss announced than it became apparent that the decision raised grave equal protection concerns. Some of these difficulties were articulated by Mr. *Page 615 
Justice Almon in Ex parte Barnard, 581 So.2d 489 (Ala. 1991):
 "The petitioners do not make an equal protection argument, but such an argument could be problematic. Why should all children similarly situated not be entitled to a college education? Under the Bayliss rule and today's holding, some children will receive support for college education while others similarly situated will not, based on the fortuitous event of when their parents divorce, not on the need and ability of the child and the wealth of the parent."
Id. at 491-92 (Almon, J., concurring in the result).
The equal protection problem posed by Bayliss in the instant case stems from the fact that "once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother."Gomez v. Perez, 409 U.S. 535, 538, 93 S.Ct. 872, 874-75,35 L.Ed.2d 56 (1973). Thus, because of Bayliss, this Court is cast upon the horns of a dilemma. It is compelled by the equal protection guarantees of both the state and federal Constitutions to extend the Bayliss doctrine to the children of unwed parents. Simultaneously, it is forbidden by the legislature, and, therefore, by the separation-of-powers provisions of the Alabama Constitution, to do so.
There is no question in this case regarding the constitutionality of § 26-17-8. The only question is whether this Court will obey the statute. Incredibly, the majority, in order to accommodate its holding in Bayliss, chooses to violate a validly enacted statute by assuming jurisdiction where jurisdiction has been denied by the legislature.
As I noted previously in this opinion, these are matters committed to the sound discretion of the legislature. In order to avoid the difficulties that were pointed out in Ex parteBarnard (Almon, J., concurring), and that are presented in this case, we must await legislative reform.
In this case, I would not be placed in the position of choosing which constitutional provision must be violated in order to preserve the holding in a judicial opinion. I would overrule Bayliss. Consequently, I would hold that henceforth Alabama trial courts have no jurisdiction to require parents to provide post-minority support for college education to children, whether the parents are divorced or have never married.
ALMON, SHORES and INGRAM, JJ., concur.
[1] At common law, an illegitimate child "was said to be filius nullius. His natural father may die never so rich, and he may be upon the parish, yet he took none of his estate, unless left to him by will. In the absence of a statute, the father is under no legal obligation to support him; and the statuteprescribes the mode, and the only mode, by which this supportcan be obtained." Simmons v. Bull, 21 Ala. 501, 504 (1852) (emphasis added).
[2] In Pruitt v. Judge of the County Court, 16 Ala. 705 (1849), this Court interpreted the Act to require 10 annual payments, not exceeding $50 dollars per payment, beginning on the date of judgment. This section became Ala. Code 1940, Tit. 6, § 12.
[3] Although the Brewington doctrine, which recognizes jurisdiction to order post-minority support for the disabled, may suffer the same infirmity as does the Bayliss principle, there is no issue of disability in this case. Therefore, I will reserve judgment on Brewington until an issue of disability is squarely before the Court.