I concur to reverse the summary judgment for the plaintiffs, but for reasons different from those stated in the majority opinion. I think the deed from the husband, Lonnie Carter, to his wife, Grace Carter, extinguished the joint tenancy with right of survivorship because it merged all of the interests in Grace Carter. I have reread the Nunn v. Keith line of cases, and I agree with Justice Adams that, under the holdings ofJackson v. Fillmore, 367 So.2d 948 (Ala. 1979), and Bringhurstv. Hardin, 387 So.2d 186 (Ala. 1980), the indestructability rule of Bernhard v. Bernhard, 278 Ala. 240, 177 So.2d 565
(1965), is to be applied to joint tenancies created afterBernhard was decided *Page 873 
in 1965 and before it was overruled by Nunn in 1972.[1] However,Bernhard does not address the effect of a deed from one joint tenant to the other, and a case following Bernhard, and prior to Nunn, recognized the efficacy of such a deed.
In Shrout v. Seale, 287 Ala. 215, 250 So.2d 592 (1971), Mr. and Mrs. Seale owned property jointly with right of survivorship.[2] In 1964, a judgment against Mr. Seale was recorded in the probate office. In 1966, Mr. Seale executed a warranty deed conveying his interest in the subject property to Mrs. Seale. In 1968, the sheriff levied on the property and sold it to Shrout. The Court held that, under the deed creating the joint tenancy, Mr. Seale "owned two different interests in the property, to wit: an undivided half interest for his life and a contingent remainder in the whole. Bernhard v. Bernhard, supra." 287 Ala. at 217, 250 So.2d at 593. The Court held that, because a life estate in an undivided one-half interest in property is subject to execution, the recording of the judgment created a lien on Mr. Seale's life interest, which then passed to Shrout when she purchased at execution. The Court also held that, because "[a] contingent remainder is not subject to levy and sale under execution," id., Mr. Seale's contingent remainder "was not subject to the judgment lien."287 Ala. at 218, 250 So.2d at 594.
Then follows the crucial aspect of Shrout:
 "Consequently, by the deed of February 15, 1966, Farmer Seale conveyed to Carolyn Seale his contingent remainder unencumbered by the judgment, as well as his life estate which was subject to the judgment lien. See Title 47, § 13 [Ala. Code of 1940] ['Who may convey lands by deed or will,' i.e., persons over 21 not under incapacity].
 " 'Even though the common law considered a contingent remainder to be an expectancy not assignable by deed to a stranger, such an interest could be released to the tenant in possession or the holder of the prior estate, or to the reversioner, so as to create in the latter a fee simple. Such a release operated not as a conveyance, but as an extinguishment. Thus, if two persons have the use of property for their joint lives, with a contingent remainder to the survivor of them, one of them may release to the other his interest in the property, present and future. . . .' 28 Am.Jur.2d Estates, § 317."
287 Ala. at 218, 250 So.2d at 594 (emphasis added).
Therefore, I would hold simply that Lonnie Carter's 1970 deed to his wife Grace extinguished his interest in the property and that she held it thereafter in fee simple. I note that Isom v.Bledsoe, 488 So.2d 1356 (Ala. 1986), is consistent with this result. Isom follows the Bringhurst rule that a pre-1965 joint tenancy is not governed by Bernhard, and on that basis holds that a joint tenancy created in 1964 was severed by the wife's deed to the husband in 1969. In my view, Isom could equally well have been decided, to the same result, on the basis of theShrout rule. I see no need to condition the holding in this case on the question whether Grace Carter consented to receive the deed from her husband. In a proper case a purported recipient could, of course, object that he or she did not consent to receive the property, but there is no indication Grace objected to the transfer, so I do not see the need even to raise the question.
[1] Jackson could be read as applying Bernhard to post-1965 deeds only if there is evidence that the parties specifically relied on Bernhard in creating the joint tenancy or in handling the property, but we do not need to reach that question here.
[2] The joint tenancy was created long before Bernhard, but the Court was not concerned with that question because Bernhard was the law when Shrout was decided. That is, there was no thought that the tenancy might have been destructible because it was created before Bernhard, as the Court would later hold under the Nunn/Jackson/Bringhurst rulings.