This is an appeal from a jury verdict, and judgment of the court, finding, and decreeing Stanley Harris to be the father of an illegitimate child, and ordering him to pay child support. We affirm.
In March, 1970, Harris, an adult single man, went to Bayou Coiffeur in Alabama City to get a haircut. There he met Mary Moore, an adult single woman. About two weeks later, he asked Mary for a date. They began dating, and a few months later they engaged in sexual intercourse, first at her apartment, then at other places, Birmingham, Atlanta, Miami, the beach at Panama City, and, Mary became pregnant. The pregnancy was aborted, and they resumed their sexual intimacies, once a week, sometimes twice on the weekends, and Mary became pregnant again. Harris asked her to abort. Mary refused, and a child was born unto her on June 30, 1973. After that Harris lost interest in Mary, but Mary did not lose interest in Harris. She would call him at home — sometimes late at night — at his job. She would follow him *Page 624 
with or without his new girl friend; she would bang on the apartment door of Harris' friend when he was there; she would blow her automobile horn in the apartment complex when Harris was visiting his girl friend, and in general, harassed Harris as much as she could. Finally, the tempest subsided. She married and he married.
In a paternity proceeding Stanley Harris was determined to be the father of Mary's child, and ordered by the court to pay child support. The sole issue raised on appeal is the overruling of Harris' motion to dismiss the State's complaint. Harris contends that Alabama's paternity determination proceeding statutes deny the father of an illegitimate child equal protection of the laws. In short, Harris says that because Mary did not consent to have an abortion when he requested her to do so, coupled with the fact that he agreed to pay for the abortion, he has been denied any decision as to the birth of the child; therefore, he is not liable for the child's maintenance, care and education.
In Planned Parenthood of Central Missouri v. Danforth,428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) the United States Supreme Court was presented the question of the constitutionality of a Missouri statute requiring the husband's written consent of a wife seeking an abortion during the first 12 weeks of pregnancy, unless the abortion is certified by a licensed physician to be necessary in order to preserve the life of the mother. The appellants, there, contended that the statute afforded the husband the unilateral right to prevent or veto an abortion whether or not he is the father of the fetus. The court held that the State may not constitutionally require the consent of the spouse as a condition of abortion during the first 12 weeks of pregnancy. The court stated:
 "We recognize, of course, that when a woman, with the approval of her physician but without the approval of her husband, decides to terminate her pregnancy, it could be said that she is acting unilaterally. The obvious fact is that when the wife and the husband disagree on this decision, the view of only one of the two marriage partners can prevail. Since it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor."
The court concluded that the section of the statute requiring the spouse's consent to abort was unconstitutional.
While in Planned Parenthood of Central Missouri the court dealt with the consent of the husband, and his veto power on abortion, this case presents the question of whether an unmarried man may unilaterally require his unmarried paramour to abort the fetus which he fathered, and, if he cannot, he is not liable for the child's support after its birth. We hold that he cannot, and that he is. Once the reputed father of an illegitimate child is found guilty, and adjudged its father, he is liable for the care, maintenance, and education of the child, and to all penalties for failure to perform those obligations, the same as a father of a legitimate child. T. 27, § 12-4, Code of Alabama, 1940. Moore v. LeFlore, 288 Ala. 315,260 So.2d 585 (1972). Obviously, the father of a legitimate child could not forsake his obligations to his child just because his wife failed to honor his request to abort the fetus.
We hold that the decision not to have an abortion was that of Mary Moore, and hers alone, and by not having one at the request of Harris, Harris cannot now shirk his obligations to the child as required by the statute. We find no constitutional infirmities in the paternity determination proceedings statutes.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, ALMON and EMBRY, JJ., concur. *Page 625