592 So.2d 608 (1991)
Ex parte Bobby JONES.
(Re Bobby JONES v. Esther Faye WILLIAMS).[*]
1901116.
Supreme Court of Alabama.
December 20, 1991.
*609 Demetrius C. Newton, Birmingham, for appellant.
J. Scott Vowell of Vowell & Meelheim, P.C., Birmingham, for appellee.
HORNSBY, Chief Justice.
In Ex parte Bayliss, 550 So.2d 986, 987 (Ala.1989), this Court held that Alabama trial courts "have jurisdiction to require parents to provide post-minority support for college education to children of a marriage that has been terminated by divorce." In the present case, we are called upon to decide whether the principle established in Bayliss encompasses the situation where the child is born out of wedlock and the parents have not subsequently married.
Darlene Williams was born out of wedlock to Esther Faye Williams on March 25, 1972. A paternity action instituted by Esther in 1973 established Bobby Jones as Darlene's father, and he was required to pay the mother $43.75 per month as child support. As the result of a modification proceeding in 1977, the child support obligation was increased to $20.00 per week and Jones was required to provide medical insurance for Darlene. In 1989, Esther filed another petition to modify Jones's child support obligation. She sought an increase in the child support payments to meet Darlene's dental expenses and future college education expenses. A trial court referee ordered Jones to pay $350.00 per month as child support until Darlene reached the age of majority or until she reached the age of 21 if she attended an accredited college. The trial court, upon appeal of the referee's decision, ordered Jones to pay $475.00 per month as child support until Darlene reached her 19th birthday. Upon reaching age 19, Jones was to pay $475.00 each month Darlene was enrolled in college, until her 23rd birthday.
Upon appeal, Jones relied on this Court's decision in Ex parte Bayliss, 550 So.2d 986 (Ala.1989), and claimed that the trial court had erred in ordering him to provide post-minority support for college education expenses in circumstances not involving divorce. The Court of Civil Appeals affirmed, holding that the father of a child born out of wedlock could be required to provide the child post-minority support for a college education.
Jones petitioned this Court for a writ of certiorari. We granted the petition, and now affirm the judgment of the Court of Civil Appeals.
Initially we recognize that our recent decision in Ex parte Barnard, 581 So.2d 489 (Ala.1991), limited the trial courts' jurisdiction to award or modify child support to provide post-minority support for college education to cases in which a petition for the award or modification is made prior to the child's reaching the age of majority. In the present case, Darlene was 18 years of age, not yet at the age of majority in Alabama, when her mother filed the petition for modification of child support at issue. Thus, the child support petition meets the mandate of Barnard.
We further note that the characterization of Darlene as an illegitimate child is irrelevant to the disposition of this case. It is firmly established in this State that parental obligations do not differ with regard to whether the parents of the child are married. Harris v. State, 356 So.2d 623 (Ala.1978). In fact, we have held that "the ultimate objective of the [Uniform Parentage Act, Ala.Code 1975, § 26-17-1 et seq.,] is to promote full equality for all children, *610 be they legitimate or illegitimate." Ex parte Presse, 554 So.2d 406, 411 (Ala.1989).
With any consideration of legitimacy removed from this case, we find no basis for distinguishing between the character of the familial relationships in this case and those we recognized in Bayliss. Further, contrary to Jones's contention, our decision in Bayliss did not depend on the fact that the parties to that proceeding were divorced. Our decision did, however, depend on the existence of the parent-child relationship. Therefore, we hold that the "college education exception" to the general rule that a "parent has no duty to contribute to the support of his or her child after that child has reached the legislatively prescribed age of majority," Bayliss, 550 So.2d at 992, applies as well where the parents were not married at the time of the birth of the child and were not married thereafter.
In Bayliss, we set out the factors a trial court shall consider in determining whether to order a noncustodial parent to provide post-minority support to his children for a college education:
"[A] trial court may award sums of money out of the property and income of either or both parents for the post-minority education of a child [and] ... [i]n doing so, the trial court shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education. The trial court may consider, also, the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance."
Bayliss, 550 So.2d at 987. Aside from the reference to the dissolution of marriage, we believe that the factors we require the trial court to consider in the context of support for children of divorced parents are no less applicable in the situation where the parents have never married. In either circumstance, the existence of a legal parent and child relationship is the focal point of our analysis.
We agree with the Court of Civil Appeals that the trial court properly considered the factors set out above in arriving at its conclusion. Therefore, the judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
MADDOX, STEAGALL and KENNEDY, JJ., concur.
HOUSTON, J., concurs specially.
ALMON, SHORES, ADAMS and INGRAM, JJ., dissent.
HOUSTON, Justice (concurring specially).
As the author of the majority opinion in Ex parte Bayliss, 550 So.2d 986 (Ala.1989), I find that the premise upon which Justice Adams bases his dissent is faulty. It is based upon there being no support in statutory law for the majority opinion; this is not correct.
In his dissent, Justice Adams's historical account of the Parentage Act and the Non-support Act is interesting and instructive; however, it does not make his dissent, which is based on a faulty premise, correct. The dissent is premised on the majority's holding being forbidden by statute, specifically, Ala.Code 1975, § 26-17-8, which provides:
"(a) The father's liabilities for past education and necessary support are limited to a period of two years next preceding the commencement of an enforcement action under this chapter unless an order of support has been previously entered.
"(b) An action to determine paternity for the purposes of obtaining support shall not be brought after the child attains age 19.
"(c) The provisions of this section and section 26-17-6 do not extend the time within which a right of inheritance, or a right to succession may be asserted beyond the time provided by law relating to distribution and closing of decedents' estates *611 or to the determination of heirship, or otherwise."
How, pray tell, does the majority opinion "violate[] both the spirit and the letter of § 26-17-8"? It does not. The only subsection of this Code section that could apply is (b). This action was filed before the child attained age 19. As a matter of fact, all actions for post-minority support for college education must be filed before the child attains age 19. Ex parte Barnard, 581 So.2d 489 (Ala.1991).
ADAMS, Justice (dissenting).
I respectfully dissent. The majority opinion, on the authority of Ex parte Bayliss, 550 So.2d 986 (Ala.1989), holds that henceforth "Alabama trial courts `have jurisdiction to require parents to provide post-minority support for college education to children,'" whether the parents are divorced or have never married. This holding finds no support in statutory law. On the contrary, it is forbidden by statute. The holding of the majority, therefore, violates the applicable statutory law and there are grave questions regarding its constitutionality. Because of the seriousness of these criticisms, I shall set forth my reasoning in some detail.

I. Statutory Analysis
The jurisdiction of trial courts to order child support for illegitimate children is currently defined by the Alabama Uniform Parentage Act, Ala.Code 1975, §§ 26-17-1 to -21 ("Parentage Act"). The Parentage Act was drafted specifically to provide a "civil cause of action in the courts of this state for the determination of paternity for the purposes of support and other reasons." Act No. 84-244, 1984 Ala.Acts 375. Section 26-17-2 declares the object of the Act, which is to apply the consequences of the "parent and child relationship ... equally to every child and to every parent, regardless of the marital status of the parents." Most pertinent for our discussion is § 26-17-8(b), which provides that "[a]n action to determine paternity for the purposes of obtaining support shall not be brought after the child attains age 19." Although it is unnecessary to look further than this section to conclude that the legislature intended to remove from trial courts the jurisdiction to order post-minority support for illegitimate children, an examination of the legislative background of the Parentage Act is enlightening.
The first predecessor of the Parentage Act was passed on December 13, 1811, by the General Assembly of the Territory of Mississippi. The Act of 1811 Concerning Bastardy, Act No. 7 of the Mississippi Territorial Legislature of 1811 ("Bastardy Act"), which was the first statute aimed at providing support for illegitimate children in Alabama, prescribed a procedure for the determination of paternity.[1] In relevant part, the Act provided:
"[Section 1] When any single woman, who shall be pregnant, or delivered of a child, which by law would be deemed a bastard, shall make complaint to any one or more justices of the peace for the county, where she may be so pregnant or delivered, as aforesaid, and shall accuse any one of being the father of such child, it shall be the duty of such justice or justices, to issue process to the sheriff... of such county, against the person so accused as aforesaid, and cause him to be brought forthwith before him.
"[Section 2] Upon his appearance, it shall be the duty of the said justice or justices, to examine the said female, in the presence of the man alleged to be the father of the child, touching the charge against him; and if said justice or justices shall be of opinion, that sufficient cause appears, it shall be his or their duty to bind the said person, so accused, in bond, with good and sufficient security, to be and appear before the next county court....

*612 "[Section 3] The county court aforesaid, at their next term, shall have full and complete cognizance and jurisdiction of said charge of bastardy. And the court shall cause an issue to be made up, `whether the reputed father is the real father of the child, or not;' which issue shall be tried by a jury...."
Section 4 of the Act, which contained the relevant support provision, stated:
"If the issue is found against the defendant, or imputed father, then he shall be condemned by the judgment of said court, to pay, not exceeding fifty dollars, at the discretion of said court, yearly, for ten years, towards maintenance and education of said child; and the said imputed father shall give bond and security, for the due and faithful payment of said sum of money...."
(Emphasis added.)[2]
The provision requiring support payments was first codified at Ala.Code 1852, § 3808. Section 3808 required the defendant to "enter into bond and security ... in the sum of one thousand dollars, payable to the state, and conditioned to pay such sum, not exceeding fifty dollars a year ... for ten years, to the judge of probate of the county, for the support and education of the child." Section 3808 passed into the next five successive Codes without substantial change. See Ala.Code 1867, § 4405; Ala.Code 1876, § 4080; Ala.Code 1887, § 4854; Ala.Code 1896, § 4393; and Ala.Code 1907, § 6376.
In 1915, the legislature enacted what was to become an important supplement to the limited protection afforded illegitimate children by the Bastardy Act. Act No. 498, 1915 Ala.Acts 560 ("Non-support Act"), criminalized a parent's failure to support "his or her child, or children, under the age of sixteen years." (Emphasis added.) The Act further provided:
"At any time before the trial, or pending an appeal, ... the judge of said court may enter such temporary orders as may seem just, providing for the support of the neglected wife or children, or both....
"Before the trial, with the consent of the defendant, or at the trial, on entry of a plea of guilty, or after conviction, instead of imposing the penalties hereinbefore provided or in addition thereto, the judge in his discretion, having regard to the circumstances, and to the financial ability, or earning capacity, of the defendant, shall have the power to make an order ... directing the defendant to pay a certain sum periodically, either directly, or through a probation officer, to the wife, or to the guardian, curator, or custodian of the said minor child... and to release the defendant from custody on probation...."
(Emphasis added.) Four years later, the legislature amended the Act to raise the age limit for receiving support to 18 years. Act No. 181, 1919 Ala.Acts 176, codified at Ala.Code 1923, §§ 4480-4495.
The Non-support Act supplied a significant disincentive for desertion and neglect of minor children. The Act was, however, initially held to be inapplicable to illegitimate children. Ex parte Newsome, 212 Ala. 168, 102 So. 216 (1924). Consequently, the Bastardy Act's $50 per year support provision continued to be the illegitimate minor child's only remedy.
This impediment was removed when, in 1923, § 4479 was added to the Code. Ala. Code 1923, § 4479 defined the word "parent," for the purpose of the Non-support Act, to "include [the] natural legal parent or parents, or other persons who shall have legally acquired the custody of such child or children, and the father of such child or children, though born out of lawful wedlock." (Emphasis added.) Thus, for the first time in this state, through the combination of the Bastardy Act's mechanism for proving paternity with the Non-support Act's flexible power to provide meaningful support, illegitimate children under 18 years of age had legal recourse to significant subsistence. Law v. State, 238 Ala. *613 428, 430, 191 So. 803, 804 (1939); Coan v. State, 224 Ala. 584, 585, 141 So. 263, 263-64 (1932).
For the next 38 years, these pertinent sections of the Bastardy Act and the Non-support Act, which passed into the 1940 Code as Tit. 6, § 12, and Tit. 34, §§ 89, 90, and 98, respectively, provided complementary benefits for illegitimate children. See Law v. State, supra (paternity must be proven under provisions of Bastardy Act before support could be awarded under provisions of Non-support Act).
In 1961, the legislature replaced the Bastardy Act with Act No. 295, 1961 Ala.Acts 2353, codified at Ala.Code 1940 (Recomp.1958), Tit. 27, §§ 12(1)-(9) (Cum.Supp. 1973) ("Paternity Act"). The Paternity Act, like the Bastardy Act, provided a mechanism for proving paternity in "any court of the county where [the complainant resided], having jurisdiction ... to try and punish parents for the offenses of desertion and non-support, as provided for under Title 34, sections 89 to 104, inclusive." Ala.Code 1940 (Recomp.1958), Tit. 27, § 12(1). Moreover, the Paternity Act also incorporated some of the language and much of the substance of the Non-support Act. For example, the Paternity Act provided:
"If a reputed father is found guilty or admits the truth of the complaint, he shall be adjudged to be the father of such child, and thenceforth shall be subject to all obligations for the care, maintenance, and education of such child and to all the penalties for failure to perform the same which are or shall be imposed by law upon the father of a legitimate child of like age and capacity. Judgment may be for periodic payments which may vary in amount. The court may order payments to be made to the mother or other persons or agency designated to administer them under the supervision of the court."
Tit. 27, § 12(4) (emphasis added). The legislature did not, at that time, incorporate into the Paternity Act the Non-support Act's age limitation.
In 1977, the legislature raised the age limit on the right of illegitimate children to receive support from 18 to 19 years, when it replaced § 90 of the Non-support Act with the act that became Ala.Code 1975, § 13A-13-4. That section now provides:
"(a) A man or woman commits the crime of nonsupport if he or she intentionally fails to provide support which that person is able to provide and which that person knows he or she is legally obligated to provide to a dependent spouse or child less than 19 years of age.

"....
"(c) `Child' includes a child born out of wedlock whose paternity has been admitted by the actor or has been established in a civil suit."
(Emphasis added.) The remainder of the Non-support Act, with the exception of § 91, still exists as Ala.Code 1975, §§ 30-4-50 to -65.
Seven years later, the Paternity Act was superseded by the Parentage Act, the legislature's most recent statement on the subject of support for illegitimate children. The Parentage Act, like its predecessors, sets forth procedures for a determination of paternity and provides for court-ordered support following such a determination. See Ala.Code 1975, § 26-17-14. However, unlike its predecessors, the Bastardy Act and the Paternity Act, the Parentage Act's provision tying actions for support to the age of majority of the child now parallels the Non-support Act's age limitation on the right to receive child support. In view of the extensive, complementary history and the interplay of the Parentage Act's predecessors with the Non-support Act and its predecessors, the inescapable effect of this section is to remove from trial courts the jurisdiction to order support for illegitimate children past the legislatively prescribed age of majority.
At this juncture, it hardly seems necessary to point out that these are matters with which the courts have nothing to do. The "power to raise or lower the [age of majority] is exclusively reserved to the legislature and outside the authority of the courts." State ex rel. Taylor v. Nelson, *614 535 So.2d 178, 179 (Ala.Civ.App.1988) (emphasis added); Davenport v. Davenport, 356 So.2d 205, 210 (Ala.Civ.App.1978) ("fixing of the age of majority is within the sphere of the legislature not the courts"); see also Hutchinson v. Till, 212 Ala. 64, 65, 101 So. 676, 676 (1924) ("Legislature has full power to prescribe" age of majority).
In extending the "college education exception" set forth in Ex parte Bayliss, 550 So.2d 986 (Ala.1989), to confer jurisdiction on Alabama trial courts to order post-minority support for illegitimate children, the majority opinion violates both the spirit and the letter of § 26-17-8. To be sure, the extension of Bayliss to encompass the situation presented in this case follows from the amalgamation of the Bayliss doctrine with the equal protection guarantees of both the federal and state constitutions. The Bayliss doctrine, therefore, must be reconsidered in light of the equal protection issues raised by its operation on the facts of this case.

II. Equal Protection
The well-established rule in this state was that "[a] father [was] bound, by the common law, to support and educate his children during their minority." Beasley v. Watson, 41 Ala. 234, 240 (1867) (emphasis added); see Alston v. Alston, 34 Ala. 15, 27 (1859) ("It is a general rule of law, that the father is bound to support his minor children, if able to do so, even though they have property of their own" (emphasis added)); Godfrey v. Hays, 6 Ala. 501, 502 (1844) ("From the obligation of the father to support his children during minority, he is entitled to their services, and to the earnings of their labor" (emphasis added)).
In Bayliss, a majority of this Court held that a trial court had jurisdiction to order a divorced, noncustodial parent to pay expenses incurred by a 19-year-old child in pursuit of a college education if petition had been made for such support before the child reached age 19. In carving out this exception to the general rule, the majority correctly recognized that "any jurisdiction of a trial court to require a parent to provide post-minority support for a child's college education is conferred by statutes, expressly or by implication." Bayliss, 550 So.2d at 989. The majority further acknowledged that the "Legislature of Alabama [had] not enacted a specific statutory change in its domestic relations laws to permit post-minority support for college education." It proceeded to find such jurisdiction, however, in the "absence of restrictive language in Alabama Code 1975, § 30-3-1." Bayliss, 550 So.2d at 989 (emphasis added).
In doing so, the majority overlooked the fact that "`a fixed and received construction of a statute, made by the Supreme Court of the State," becomes a part of the statute. Jackson v. Fillmore, 367 So.2d 948 (Ala.1979), quoting Farrior v. New England Mortgage Security Co., 92 Ala. 176, 9 So. 532 (1891); Lawson v. Swift, 280 Ala. 227, 191 So.2d 379 (1966). This Court has taken numerous opportunities to pass upon the meaning of the word "children" in § 30-3-1 since the section's predecessor first appeared as Ala.Code 1852, § 1977. Until Ex parte Brewington, 445 So.2d 294 (Ala.1983), this Court had construed that section as contemplating minor children. Reynolds v. Reynolds, 274 Ala. 477, 149 So.2d 770 (1963), overruled by Ex parte Brewington, 445 So.2d 294 (Ala.1983); Murrah v. Bailes, 255 Ala. 178, 50 So.2d 735 (1951). This consideration appears to have been overlooked in favor of the concededly marginal inference that could be drawn from the fact that the legislature did not immediately react to the novel construction employed by Brewington.[3]Ex parte Bayliss, 550 So.2d at 993-94.
No sooner was Bayliss announced than it became apparent that the decision raised grave equal protection concerns. Some of these difficulties were articulated by Mr. *615 Justice Almon in Ex parte Barnard, 581 So.2d 489 (Ala.1991):
"The petitioners do not make an equal protection argument, but such an argument could be problematic. Why should all children similarly situated not be entitled to a college education? Under the Bayliss rule and today's holding, some children will receive support for college education while others similarly situated will not, based on the fortuitous event of when their parents divorce, not on the need and ability of the child and the wealth of the parent."
Id. at 491-92 (Almon, J., concurring in the result).
The equal protection problem posed by Bayliss in the instant case stems from the fact that "once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." Gomez v. Perez, 409 U.S. 535, 538, 93 S.Ct. 872, 874-75, 35 L.Ed.2d 56 (1973). Thus, because of Bayliss, this Court is cast upon the horns of a dilemma. It is compelled by the equal protection guarantees of both the state and federal Constitutions to extend the Bayliss doctrine to the children of unwed parents. Simultaneously, it is forbidden by the legislature, and, therefore, by the separation-of-powers provisions of the Alabama Constitution, to do so.
There is no question in this case regarding the constitutionality of § 26-17-8. The only question is whether this Court will obey the statute. Incredibly, the majority, in order to accommodate its holding in Bayliss, chooses to violate a validly enacted statute by assuming jurisdiction where jurisdiction has been denied by the legislature.
As I noted previously in this opinion, these are matters committed to the sound discretion of the legislature. In order to avoid the difficulties that were pointed out in Ex parte Barnard (Almon, J., concurring), and that are presented in this case, we must await legislative reform.
In this case, I would not be placed in the position of choosing which constitutional provision must be violated in order to preserve the holding in a judicial opinion. I would overrule Bayliss. Consequently, I would hold that henceforth Alabama trial courts have no jurisdiction to require parents to provide post-minority support for college education to children, whether the parents are divorced or have never married.
ALMON, SHORES and INGRAM, JJ., concur.
NOTES
[*] [Reporter of Decisions' note: Some of the documents filed in this case spell the respondent's name as Ester Fay Williams. Her brief to the Supreme Court indicates that she is now known as Esther Faye Anchrum.]
[1] At common law, an illegitimate child "was said to be filius nullius. His natural father may die never so rich, and he may be upon the parish, yet he took none of his estate, unless left to him by will. In the absence of a statute, the father is under no legal obligation to support him; and the statute prescribes the mode, and the only mode, by which this support can be obtained." Simmons v. Bull, 21 Ala. 501, 504 (1852) (emphasis added).
[2] In Pruitt v. Judge of the County Court, 16 Ala. 705 (1849), this Court interpreted the Act to require 10 annual payments, not exceeding $50 dollars per payment, beginning on the date of judgment. This section became Ala.Code 1940, Tit. 6, § 12.
[3] Although the Brewington doctrine, which recognizes jurisdiction to order post-minority support for the disabled, may suffer the same infirmity as does the Bayliss principle, there is no issue of disability in this case. Therefore, I will reserve judgment on Brewington until an issue of disability is squarely before the Court.