# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

ELIZABETH ELLEN SORREL,

Plaintiff/Appellee,

VS.

LARRY AUBREY HENSON,

Defendant/Appellant.

) 
) 
) Shelby Juvenile No. H331
) 
) Appeal No. 02A01-9609-JV-00212
) 
) 
) 
) 
) 
) 

FILED

December 18, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE JUVENILE COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE KENNETH TURNER, JUDGE

**HAL ROUNDS**
Memphis, Tennessee
Attorney for Appellant

**JOHN KNOX WALKUP**
**Attorney General & Reporter**
**KIMBERLY M. FRAYN**
**Assistant Attorney General**
Nashville, Tennessee
Attorney for State of Tennessee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Larry Aubrey Henson (Henson) appeals the trial court's order establishing Henson's paternity of Elizabeth Sorrell's child, Alexander. In this appeal, we address whether Tennessee's paternity statutes[1] violate the Fourteenth Amendment to the United States Constitution. For the reasons hereafter stated, we find no such violation, and we affirm the trial court's judgment.

## Facts and Procedural History

On January 23, 1996, Sorrell filed a petition seeking to establish Henson's paternity as to Sorrell's unborn child. The petition further sought, among other things, child support payments. A summons was served upon Henson on February 2, 1996, which commanded him to appear before the juvenile court on February 7, 1996. On February 6, 1996, Henson filed an answer denying paternity. Thereafter, on February 7, 1996, Henson voluntarily appeared before the juvenile court and requested that blood tests be performed. Accordingly, the juvenile court ordered "that all parties submit to blood tests," and ordered "that the case be continued."

The child, Alexander, was born on March 11, 1996, and subsequent blood tests revealed "the probability of [Henson's] paternity is 99.95%, as compared to an unrelated, untested random man of the same race." The matter was again brought before the juvenile court on June 11, 1996. At the June hearing, Henson did not offer *any* proof to contest paternity. However, Henson apparently orally moved to dismiss the petition filed against him. This motion is evidenced solely by the following exchange, which is excerpted from the hearing's transcript and which sets forth the substance of and grounds for Henson's oral motion:

> THE COURT: -- (Indiscernible) based upon what reason?
> RESPONDENT HENSON: Based upon the fact that . . . women have a fundamental right to reject parenthood after conception, first with abortion and then with adoption. The State denies a man's [sic] his right that he – that it offers a woman -- the Fourteenth Amendment.

Stated otherwise, Henson asserted that paternity actions under Tennessee law were unconstitutional based upon violation of Henson's Fourteenth Amendment rights.

Subsequently, the juvenile court implicitly denied Henson's motion to dismiss by entering an order

---

1. During the course of the trial court's proceedings, Tennessee paternity actions were governed by Tennessee Code Annotated, Title 36, Chapter 2, Part 1. See Tenn. Code Ann. §§ 36-2-101 *et seq.* (1996). This Part, however, was repealed by Acts 1997, ch. 477 § 1, and paternity actions are now governed by Part 3 of Title 36, Chapter 2. See Tenn. Code Ann. §§ 36-2-301 *et seq.* (Supp. 1998).

establishing Henson's paternity of Alexander and directing the payment of child support. The order further set forth visitation and established that Henson would be responsible for one-half of any medical expenses relating to Alexander, including health insurance premiums and any out-of-pocket medical expenses not covered by insurance. Thereafter, Henson appealed the trial court's denial of his motion to dismiss.

Before proceeding with further analysis of this case, we note that the only issue raised on appeal that was also raised in the trial court is the alleged violation of the Fourteenth Amendment, but that Henson raises additional constitutional issues in his brief. Any such additional issues, however, are waived based upon Henson's failure to raise them before the trial court. See Barnhill v. Barnhill, 826 S.W.2d 443, 458 (Tenn. App. 1991). Similarly, we note that Henson has challenged the constitutional validity of a specific provision of the paternity statutes that previously required the father to pay the maternal costs of the mother.[2] This issue likewise was not raised before the trial court and is waived.

## Analysis

Section one of the Fourteenth Amendment to the United States Constitution provides the following:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

## A.  Substantive Due Process

> Although a literal reading of [the Due Process Clause of the Fourteenth Amendment] might suggest that it governs only the procedures by which a State may deprive persons of liberty, . . . the Clause has been understood to contain a substantive component as well, one "barring certain government actions regardless of the fairness of the procedures used to implement them." . . . . "Thus all fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States."

Planned Parenthood v. Casey, 505 U.S. 833, 846-47 (1992) (citations omitted). The United States Supreme Court has recognized, "Our law affords constitutional protection to personal decisions relating to marriage,

---

2.  During the course of the trial court's proceedings, Tennessee Code Annotated section 36-2-108 established that orders of paternity and support "shall also provide for the payment of the necessary expenses incurred by or for the mother in connection with the mother's confinement and recovery." Tenn. Code Ann. § 36-2-108 (1996). This statute has since been repealed by Acts 1997, ch. 477 § 1, and Tennessee's current paternity statutes establish that orders of parentage shall include a "[d]etermination of the liability for a mother's reasonable expenses for her pregnancy, confinement and recovery to either or both parties." Tenn. Code Ann. § 36-2-311(a)(13) (Supp. 1998) (emphasis added).

3

procreation, contraception, family relationships, child rearing and education." Id. at 851. The Court has further recognized "the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." Id. (quoting Eisenstadt v. Baird, 405 U.S. 438, 453 (1972)). These rights are grounded in the concept of liberty and have often been collectively referred to as a right to privacy. See Id. The validity of a state law that abridges any such right is generally determined based upon whether the law in question is necessary to advance a compelling state interest. Generally, if the abridged right is fundamental to the concept of liberty and the law abridging the right is not necessary to advance a compelling state interest, then the law violates the Fourteenth Amendment's substantive due process guarantees. The substantive component of the Due Process Clause of the Fourteenth Amendment is violated only in instances wherein a person's liberty has been abridged by state law. If state law has not abridged any such right, then the Fourteenth Amendment's substantive due process guarantees have not been violated.

In the present case, Henson argues that Alexander was born without Henson's consent[3] and that the juvenile court's imposition of support obligations is null and void because Tennessee's paternity statutes violate Henson's procreational autonomy. Essentially, Henson's assertion that Alexander was born without his consent amounts to a contention that Henson did not deliberately father a child. Admittedly, Henson engaged in sexual relations with Sorrell, and he does not contest that he is the biological father.

Our own Tennessee Supreme Court has stated, "the right of procreational autonomy is composed of two rights of equal significance -- the right to procreate and the right to avoid procreation." Davis v. Davis, 842 S.W.2d 588 (Tenn. 1992). Procreational autonomy, however, is irrelevant to paternity actions. See Hughes v. Hutt, 455 A.2d 623, 624 (Penn. 1983). Tennessee paternity actions do not abridge one's right to determine *whether* to procreate, but involve cases where procreation has resulted from the *private* acts of the biological parents.

---

3. In a separate related case that is also before this Court, Henson introduced evidence relating to, among other things, claims of misrepresentation as to Sorrell's use of contraceptive measures. See Henson v. Sorrell, No. 02A01-9711-CV-00291 However, in *this* case, the factual assertions made by Henson in his brief that relate Sorrell's alleged misrepresentations are not supported by any evidence in the record. Rule 6 of the Rules of the Court of Appeals expressly establishes, "[n]o assertion of fact will be considered on appeal unless the argument upon such assertion contains a reference to the page or pages of the record where evidence of such fact is recorded." R. CT. APPEALS 6. *See also* State v. Draper, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990) (allegations in pleadings are not evidence). Because facts asserted by Henson in his brief are not supported by any evidence in the record on appeal in this case, we will not consider any such additional facts in reviewing this case.

Though we note that the specific constitutional challenge presented to this court is an issue of first impression in this jurisdiction, other jurisdictions have addressed similar constitutional challenges in paternity actions and have consistently concluded that paternity actions brought against a putative father who did not consent to childbirth do *not* violate the father's right to procreational autonomy. For example, in <u>L. Pamela P. v. Frank S.</u>, 449 N.E.2d 713 (N.Y. 1983), a paternity suit was brought against a putative father by a mother who had deliberately misrepresented her use of contraception. 449 N.E.2d at 714. The father asserted that the paternity suit, with its imposition of a support obligation, constituted state infringement upon his constitutional right to decide whether to father a child. <u>Id.</u> at 715. The court, however, reasoned the following:

> Clearly, [the father] has a constitutionally protected right to decide for himself *whether* to father a child. This right is deemed so fundamental that *governmental interference* in this area of decision-making may be justified only by compelling State interests. . . . . This aspect of the right to privacy has never been extended so far as to regulate the conduct of *private* actors as between themselves. . . . .
> [The father seeks to] be relieved of his obligation to support a child he did not [deliberately] have. But [the father's] constitutional entitlement to avoid procreation does not encompass a right to avoid a child support obligation simply because another private person has not fully respected his desires in this regard. However unfairly [the father] may have been treated by [the mother's] failure to allow him an equal voice in the decision to conceive a child, such a wrong does not rise to the level of a constitutional violation.

<u>Id.</u> at 715-16 (emphasis added) (citations omitted).

Other related cases from other jurisdictions have generally dealt with instances wherein either the mother misrepresented to the putative father that she was practicing birth control, or the putative father offered to pay for an abortion. Each such case, however, supports the conclusion that paternity actions do not deprive a putative father of his Fourteenth Amendment right to procreational autonomy simply because he did not "consent" to childbirth. <u>See</u> <u>Beard v. Skipper</u>, 451 N.W.2d 614, 615 (Mich. App. 1990) (quoting <u>L. Pamela P.</u> and holding, "We see no reason why Michigan should decide this issue differently"); <u>Faske v. Bonanno</u>, 357 N.W.2d 860, 861 (Mich. App. 1984); <u>Linda D. v. Fritz C.</u>, 687 P.2d 223, 228 (Wash. App. 1984) (citing <u>L. Pamela P.</u> and holding that the constitutionally protected right of privacy does *not* "encompass the right of one parent to avoid a child support obligation where the other parent's choice regarding procreation is not fully respected"). <u>See also</u> <u>Erwin L.D. v. Myla Jean L.</u>, 847 S.W.2d 45, 47 (Ark. App. 1993).

Consistent <u>L. Pamela P.</u> and other similar cases, we find that Tennessee paternity actions do not abridge a putative father's right to procreational autonomy, because such actions do not interfere with the determination of *whether* to father a child. Any private wrong or other such unfair treatment that previously

interfered with a man's procreational autonomy "does not rise to the level of a constitutional violation." 449 N.E.2d at 716. Accordingly, we hold that Tennessee's paternity statutes do not violate the Fourteenth Amendment's right to privacy.

## B. Equal Protection

Henson also contends that Tennessee paternity actions violate the equal protection guarantees of the Fourteenth Amendment by discriminating by gender. Henson argues in part that, while women have the "statutory" right to abortion after conception and during pregnancy, men are denied any similar opportunity to avoid the legal obligations and responsibilities of parenthood after conception.[4]

> While it is true that after conception a woman has more control than a man over the decision whether to bear a child, and may unilaterally refuse to obtain an abortion, those facts were known to the father at the time of conception. The choice available to a woman vests in her by the fact that she, and not the man, must carry the child and must undergo whatever traumas, physical and mental, may be attendant to either childbirth or abortion. *Any differing treatment accorded men and women . . . is owed not to the operation of [state law] but to the operation of nature*.

Ince v. Bates, 558 P.2d 1253, 1254 (Or. App. 1977). As evidenced from the foregoing text, Henson's characterization of the woman's right to abortion as stemming from "statutory" authority is incorrect. The differing treatment accorded men and women after conception and during pregnancy does not stem from state law, but from the operation of nature, *i.e.* biology, and from the woman's unique constitutionally protected right to choose either childbirth or abortion.

Moreover, under Tennessee law, the duty to support a child falls upon *both* biological parents, and this duty extends to both parents regardless of their marital status. See Tenn. Code Ann. § 34-11-102 (1996). Any contrary approach under state law would actually serve to violate the Fourteenth Amendment's Equal Protection Clause, because illegitimate children have the same right to support as do legitimate children. Gomez v. Perez, 409 U.S. 535 (1973).

Lastly, discriminatory classifications between genders under state law are permissible if substantially

---

4. Henson also argues that men are denied the same opportunity to avoid the legal responsibilities of parenthood that is afforded to women via *adoption*. This argument assumes, however, that men do not have the same ability under Tennessee law to compel or prohibit adoption. This assumption is incorrect because the relevant consent provisions of Tennessee's adoption statutes require the consent of *both* parents, except in certain appropriate narrowly defined instances. See Tenn. Code Ann. § 36-1-117. Cf. Bryant v. Hacker, 689 N.E.2d 609, 611 (Ohio App. 1996). Therefore, neither the mother nor the father has a unique ability to force an adoption, and both parents possess the ability to prevent an adoption. Accordingly, this argument is without merit.

related to achieving an important governmental objective. <u>Craig v. Boren</u>, 429 U.S. 190 (1976). Tennessee's interest in ensuring that children receive adequate support is such an important governmental objective, and the imposition of support obligations upon biological fathers, including married or unmarried fathers, is substantially related to the achievement of this objective. <u>See</u> <u>C.F.B. v. P.D.G.</u>, 651 P.2d 1213, 1216 (Col. 1982). <u>Cf.</u> <u>Hur v. Virginia Dept. of Social Services</u>, 409 S.E.2d 454 (Va. App. 1991) (concluding that the requirement that all fathers pay child support, regardless of whether they were "willing and intentional fathers," is related to the *compelling* governmental interest of preserving the welfare of children). Accordingly, any discriminatory effect is constitutionally permissible, and Tennessee's paternity statutes do not violate the Fourteenth Amendment's right to equal protection. <u>See also</u> <u>Bryant v. Hacker</u>, 689 N.E.2d 609, 611 (Ohio App. 1996); <u>Harris v. Alabama</u>, 356 So.2d 623, 624 (Ala. 1978); <u>Dorsey v. English</u>, 390 A.2d 1133, 1138 (Md. App. 1978); <u>D.W.L. v. M.J.B.C.</u>, 601 S.W.2d 475, 478 (Tex. App. 1980).

### Conclusion

Based upon the foregoing, we affirm the trial court's judgment. Costs of this appeal are taxed to Henson, for which execution may issue if necessary.

_____

_____ HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

7